In The Matter of Clara Nell WILLMAN,
Incompetent, Deceased,
Plaintiffs-Respondents,

v.

Thomas W. PHELPS,
Defendant-Appellant.

No. 43044.

Missouri Court of Appeals,
Eastern District,
Division One.

March 2, 1982.

Dale L. Rollings, St. Charles, for defendant-appellant.

Ellsworth Cundiff, Jr., Frederick W. Drakesmith, Steven J. Schroeder, St. Charles, for plaintiffs-respondents.

GUNN, Judge.

The subject of this appeal is the trial court's ruling that funds withdrawn from a Totten Trust for support of the incompetent trustee passed by intestacy on the death of the trustee. The trust beneficiary contends that funds reverted to or remained as part of the trust. The trial court held that by withdrawing the funds to be used for the trustee's benefit, the beneficiary had rejected the remaining funds and was estopped from asserting any claim to them. We reverse.

Clara Nell Willman had been a childless widow, living alone in a boarding hotel in St. Petersburg. Family contact was maintained through monthly correspondence with her nephew, Thomas Phelps and his wife Eleanor, who resided in St. Charles, Missouri.

From 1966 to 1973 Mrs. Willman established five savings accounts in various St. Petersburg banks and savings and loan institutions. Four of the accounts were in the name of Clara Nell Willman, trustee for Thomas W. Phelps, beneficiary. The fifth was in the name of Clara Nell Willman, trustee for Thomas W. Phelps and Eleanor Phelps, co-beneficiaries.

In February, 1976, Mrs. Willman became ill and had to be hospitalized. The Phelps went to Florida, organized her personal matters and arranged for her to be placed in a nursing home in St. Charles. In March, 1976, the St. Charles County Probate Court adjudged Mrs. Willman to be incompetent and appointed Thomas Phelps her guardian. Her estate consisted of the proceeds from the trust accounts—approximately $69,000

—which Phelps withdrew and placed in guardianship accounts in a St. Charles bank.[1] Phelps expended a portion of the funds to support and care for Mrs. Willman until she died intestate in September, 1979, leaving an estate of $59,239.05.

Phelps petitioned the court to order distribution of the entire estate to him as sole beneficiary and sent copies of his petition and the final settlement of Mrs. Willman's estate to her nearest known relatives. Respondents, the relatives of Mrs. Willman who would share in intestate distribution, prayed for intestate distribution.

The St. Charles County Circuit Court, probate division, found that the five Florida savings accounts were Totten trusts, intended by Mrs. Willman to be testamentary in nature and that a guardian cannot defeat a gift or change the testamentary intent of his ward. The court reasoned, however, that Thomas Phelps rejected the gift when he changed the title to the trust accounts and placed them in guardianship accounts. Further, since Phelps made no claim of interest in the assets of the estate before Mrs. Willman's death, the court concluded that he was estopped from claiming such exclusive interest. The court ordered intestate distribution of the assets.[2]

■ We note at the outset that we must uphold the lower court's decision in this court-tried case unless there is no substantial evidence to support the judgment, or the judgment is against the weight of the evidence, or the lower court erroneously applied or declared the law. *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694, 695 (Mo.App.1981); *McIntosh v. Dowdy*, 625 S.W.2d 162, 163 (Mo.App.1981). Our finding of error in the lower court's declaration and application of the law constrains us to reverse.

The trial court correctly identified the savings accounts established by Mrs. Willman in her name as trustee for Phelps as tentative or Totten trusts. In 1904 the New York Court of Appeals provided the following seminal definition of such trusts:

> A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.

*In Re Totten*, 179 N.Y. 112, 71 N.E. 748, 752 (1904). Missouri recognizes the tentative trust as defined by New York. *Blue Valley Federal Savings and Loan Association v. Burrus*, 617 S.W.2d 111, 113–14 (Mo.App. 1981); *First National Bank of Mexico v. Munns*, 602 S.W.2d 910, 913 (Mo.App.1980); §§ 362.475, .480, RSMo 1978; §§ 369.154.-2, .179, RSMo 1978.

■ No Missouri case precisely addresses the situation that confronts us here—the withdrawal of all the funds from a tentative trust by the guardian of an incompetent depositor/trustee. But other jurisdictions hold generally that the guardian, whose function is to conserve the ward's property and support the ward, lacks authority to alter an act taken by the ward prior to incompetency, such as revoking a trust established by the ward. Where funds existing in a revocable trust created by the ward are needed for the ward's

---

1. The record is unclear, but it appears that Phelps withdrew most of the trust funds and placed them in a guardianship checking account without a court order. The St. Charles County Probate Court apparently granted Phelps' subsequent petition for an order to place the funds in restricted accounts consisting of certificates of deposit, reserving approxi-

mately $5000.00 for deposit in a checking account.

2. The facts present a potential choice of law issue between Florida and Missouri law not briefed by the parties. We find that Missouri law is consistent with Florida law on the matter, rendering the choice of law question moot.

maintenance, however, the guardian may apply to the court for permission to withdraw sufficient funds to support the incompetent suitably. In such cases, the guardian's power to withdraw is limited to sums needed to provide for the ward's welfare, and the beneficiary of the trust is entitled to the amount remaining in the account at the death of the depositor. *Simmons v. First Federal Savings & Loan Association,* 132 F.Supp. 370, 372–73 (D.C.D.C.1955); *Katz v. Greeninger,* 96 Cal.App.2d 245, 215 P.2d 121, 124 (1950); *First National Bank v. First Federal Savings & Loan Association,* 196 So.2d 211 (Fla.Dist.Ct.App.1967); *Matter of Reich,* 94 Misc.2d 319, 404 N.Y.S.2d 781 (Sup.Ct.1978); *Application of National Commercial Bank & Trust Co.,* 50 N.Y.S.2d 274 (Sup.Ct.1944); *Weatherly v. Byrd,* 566 S.W.2d 292, 293 (Tex.1978); G. Bogert, The Law of Trusts and Trustees § 47 (1965); A. Scott, The Law of Trusts § 58.4 (1967); Restatement (Second) of Trusts § 58, Comment c (1959).

New York courts have dealt with the situation similar to this case, holding that the close out of a Totten trust and expenditure of its funds without court approval by the court-appointed guardian of the incompetent depositor exterminates neither the trust nor the beneficiary's right upon the ward's death to the funds not necessary for the ward's lifetime support. *Del Bello v. Westchester County Bar Association,* 19 N.Y.2d 466, 227 N.E.2d 579, 280 N.Y.S.2d 651, 654 (1967); *Gorfinkel v. First National Bank in Yonkers,* 19 A.D.2d 903, 244 N.Y. S.2d 877 (1963), *aff'd,* 15 N.Y.2d 711, 204 N.E.2d 497, 256 N.Y.S.2d 338 (1965).

■ In this case, Phelps' withdrawal of the Totten trust funds as guardian for the incompetent depositor did not constitute revocation of the trust. Since the estate consisted solely of the savings accounts, it was necessary to expend a portion for Mrs. Willman's support. Upon the death of the depositor without revocation, Phelps, the named trust beneficiary, became the owner of the sum remaining. We find no reason to reach a contrary conclusion merely because the depositor's guardian was also the trust beneficiary. There is no evidence that Phelps in closing out the tentative trust accounts and placing the money in guardianship accounts intended thereby to reject his interest in the trusts as beneficiary.[3]

■ Our conclusion is consistent with the fundamental Missouri principle that the guardian of an incompetent "is a mere conservator of his ward's estate, and his possession of that estate vests him with no power either intentionally or unintentionally to change his ward's duly expressed purposes respecting the disposition of her estate after her death." *Buder v. Stocke,* 343 Mo. 506, 121 S.W.2d 852, 858 (1938) [quoting *Re Estate of Cooper,* 95 N.J.Eq. 210, 123 A. 45 (1923)]; § 475.130.2, RSMo 1978.

■ The situation in this case can best be analogized to the sale by a guardian of a property owned by the ward, which the ward, while competent, has designated as a specific bequest or devise. It has been held uniformly that sale by the guardian does not work an ademption of the bequest or devise, which would have occurred if the testator had sold the property. The bequest or devise is adeemed only to the extent that the sale proceeds are used to support the ward and meet the expenses of the guardianship; the balance of the proceeds passes by will to the designated beneficiary. *Buder v. Stocke,* 121 S.W.2d at 857; *National Board of Christian Women's Board of Missions of Christian Church of the United States v. Fry,* 293 Mo. 399, 239 S.W. 519, 523 (1922); *Lamkin v. Kaiser,* 256 S.W. 558, 560 (Mo.App.1923); *Stake v. Cole,* 257 Iowa 594, 133 N.W.2d 714, 716–17 (1965); *Walsh v. Gillespie,* 338 Mass. 278, 154

---

**3.** A beneficiary of a tenative trust becomes the owner if the depositor dies before the beneficiary without revoking the trust or if the depositor completes the gift in her lifetime by delivering the passbook or otherwise notifying the beneficiary. Since we find that Mrs. Willman predeceased Phelps without revoking the trust, thereby entitling Phelps to the funds, we need not consider respondents' contention that Mrs. Willman failed to complete the gift in her lifetime.

N.E.2d 906 (1959); Annot., 51 A.L.R.2d 770 (1957).[4]

Respondents assert that the trial court properly found that Phelps was estopped from claiming the trust funds since he made no claim of interest in the assets of Mrs Willman's estate during her lifetime. There is no merit to this contention.

■ There are three essential elements to equitable estoppel or estoppel en pais: first, an admission, statement or act by the person to be estopped that is inconsistent with the claim subsequently asserted and sued upon; second, action by a second party on the faith of such admission, statement or act; third, injury to the second party resulting from permitting the first party to contradict or repudiate his admission, statement or act. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 665–66 (Mo.1970); *Block v. Block*, 593 S.W.2d 584, 589 (Mo.App.1979). The basic maxim in this regard is that estoppel forecloses one from speaking the truth in his own behalf after another has in good faith acted upon repudiated earlier statements or actions. *Emery v. Brown Shoe Co.*, 287 S.W.2d 761, 766–67 (Mo.1956); *Shaffer v. Hines*, 573 S.W.2d 420, 422 (Mo.App.1978). Estoppel should be applied circumspectly and its use restricted to circumstances in which each element clearly appears, with the burden being on the party asserting estoppel to establish the essential facts by clear and satisfactory evidence. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d at 665–66; *Kind v. Staton*, 409 S.W.2d 253, 257 (Mo.App.1966).

■ Respondents failed to sustain their burden of proving each element of estoppel. As to the first element, we have concluded that Phelps' action in withdrawing the funds from the tentative trust accounts and placing them in guardianship accounts was not a rejection of nor inconsistent with his claim to them as beneficiary. Respondents assert that Phelps failed to preserve his interest in the funds by not filing a petition under section 475.160, RSMo 1978 to determine title to the funds during Mrs. Willman's lifetime and that this constituted an act inconsistent with his later claim of interest in the funds. But the procedure set forth in section 475.160 is optional, not mandatory. Further, Phelps had no claim of interest in the trust funds while the depositor was living; the trusts became irrevocable and he became the owner only upon her death.

Respondents also failed to prove that they acted on the faith of Phelps' conduct. They merely hypothesize that one of Mrs. Willman's heirs *could* have checked the guardianship estate file, discovered assets consisting only of guardianship accounts and assumed they would pass by will or intestacy. Respondents do not make the necessary showing that they were actually misled or deceived by Phelps' conduct. *Land Clearance for Redevelopment Authority of Kansas City v. Dunn*, 416 S.W.2d 948, 951 (Mo.1967); *Emery v. Brown Shoe Co.*, 287 S.W.2d at 767. Because respondents failed to prove each element of estoppel and because imposition of the equitable remedy of estoppel would produce the inequitable result of working a positive gain to respondents and denying Phelps his rightful ownership of the trust funds, we conclude that the trial court erred in estopping Phelps from claiming his interest in the remaining

---

4. Many jurisdictions, applying the general rule that a guardian cannot exercise a personal, elective right of the ward, hold that a guardian of an incompetent cannot withdraw all the funds held in a joint account in the names of the ward and another, even though the ward could have done so while competent. The guardian can withdraw only those amounts necessary to support the ward. *See, e.g., Howard v. Imes*, 265 Ala. 298, 90 So.2d 818, 820–21 (1956); *Drozinski v. Straub*, 383 So.2d 301, 306 07 (Fla.Dist.Ct.App.1980). However, section 369.174, RSMo Supp. 1973 has been interpreted as granting an incompetent's guardian unlimited power to withdraw funds from the ward's joint account; the guardian's power over the joint account equals that held by the ward prior to becoming incompetent. *Matter of Estate of Thompson*, 539 S.W.2d 650 (Mo. App.1976). *Thompson*, of course, does not control our decision here, since this case involves a tentative trust account, not a joint account.

funds. *Block v. Block*, 593 S.W.2d at 590; *Shaffer v. Hines*, 573 S.W.2d at 422.

Judgment reversed.

KELLY, C. J., STEWART, P.J., and STEPHAN, J., concur.