**JERRY ANDERSON & ASSOCIATES, INC., Appellant,**

v.

**GAYLAN INDUSTRIES, INC., Respondent.**

No. WD 43015.

Missouri Court of Appeals, Western District.

March 26, 1991.

---

3. See F. James and G. Hazard, *Civil Procedure*, §§ 2.16–2.18, pp. 78–86 (3d ed. 1985).

Robert G. Duncan, Kansas City, for appellant.

Michael P. Joyce, James R. Wyrsch, Jacqueline A. Cook, Koenigsdorf & Wyrsch, P.C., Kansas City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Jerry Anderson and Associates, Inc., (Associates) appeals the trial court's judgment sustaining defendant's motion for directed verdict at the close of plaintiff's case. Associates sued Gaylan Industries, Inc. (Gaylan) claiming it breached the parties' contract by failing to pay Associates commissions on certain sales that Associates allegedly generated. The trial court's judgment is affirmed.

In 1983, Jerry Anderson was the sole officer, director and stockholder of Associates. He conducted business as a manufacturers' representative for Associates calling on various retail stores, primarily home improvement retailers. Gaylan, a corporation headquartered in California, manufactured oak vanities for bath and dressing rooms. In November 1983, Bill Neveling, Gaylan's sales manager, contacted Associates seeking Associates' assistance in establishing a corporate program with Payless Cashways, Inc., a Kansas City headquartered hardware and home improvement company. The proposed corporate program was an arrangement whereby all Payless Cashways stores nationwide would retail Gaylan's vanities. Jerry Anderson, as president of Associates, had dealt with Payless Cashways as a manufacturers' representative for many years, and Mr. Neveling apparently believed that Mr. Anderson's contacts with Payless Cashways would assist in establishing the corporate program.

On November 21, 1983, Associates received a letter of appointment from Gaylan designating Associates as its manufacturer's representative. Pursuant to the parties' agreement, Gaylan assigned Associates a sales district and paid Associates a five percent commission on all sales within that district. Additionally, the agreement provided for Associates to organize and maintain the corporate program with Payless Cashways, for which Associates would receive a two percent commission on all Payless Cashways' sales of Gaylan's vanities.

In January 1984, Mr. Anderson met with Rick Woods, a Gaylan employee, to report progress in establishing the corporate program. At this meeting, Mr. Anderson informed Mr. Woods that Associates was

considering a merger with Mid–Continent Marketing. According to Mr. Anderson's testimony, he told Mr. Woods that "if the merger does not work out, I still want to continue representing Gaylan.... I have got the corporate program almost set, and I want to make sure that I get my two percent [commission]." The following day, Payless Cashways informed Mr. Anderson and Mr. Woods that it would participate in Gaylan's proposed corporate program.

In February 1984, Associates and Mid–Continent Marketing merged under the name Mid–Continent Management, Inc. (Mid–Continent). Mr. Anderson, on behalf of Associates, notified Gaylan of the completed merger in a letter which stated in part:

> Please change all of your records accordingly. All memo, commissions, and correspondence should be sent to the general offices and we will distribute to each salesmen [sic].

Gaylan made the first two commission checks following the merger payable to Associates and Mr. Anderson, as president of Associates, endorsed these checks to Mid–Continent. According to Mr. Anderson's testimony, Gaylan made all later commission checks payable to Mid–Continent per his request.

In December 1984, Mr. Anderson encountered problems at Mid–Continent. These problems eventually led to Mr. Anderson leaving Mid–Continent in March 1985. Upon his departure, Mr. Anderson re-established Jerry Anderson and Associates, Inc., and notified Gaylan of his intention to continue business. Mr. Anderson insisted that Gaylan pay Associates, rather than Mid–Continent, the two percent commission on all sales made pursuant to Payless Cashways' corporate program after Mr. Anderson terminated his relationship with Mid–Continent. Gaylan, however, continued to pay all commissions to Mid–Continent pursuant to Anderson's earlier directive. Gaylan paid commissions to Mid–Continent from the time Anderson left Mid–Continent through 1987. Commissions paid by Gaylan to Mid–Continent during this period of time amounted to approximately $150,000 and are the subject of this lawsuit.

Associates filed suit against Gaylan alleging that Gaylan breached the contract between Gaylan and Associates by failing to pay Associates the commissions. At trial, Associates' evidence consisted of Mr. Anderson's testimony, various exhibits and Gaylan's interrogatory answers. At the close of Associates' evidence, Gaylan moved for directed verdict and suggested several grounds to the trial court supporting its motion. Among the grounds suggested, Gaylan contended that Mr. Anderson's instructions to it to pay all commissions to Mid–Continent estopped Associates from claiming entitlement to further commissions. The trial court granted the motion and directed the verdict for Gaylan.

On appeal, Associates contends the trial court erred in sustaining Gaylan's motion for directed verdict. In particular, in response to Gaylan's estoppel claim, Associates contends it is not estopped from claiming entitlement to the commissions because the evidence failed to prove that it had previously acted inconsistently with its current claim to the commissions, and the evidence failed to establish that Gaylan would suffer any injury should judgment be granted compelling it to pay to Associates the amount of the commissions claimed.

■ A verdict should be directed for defendant only when no issues of fact remain for the jury to decide. *Teachenor v. De Priest,* 600 S.W.2d 122, 124 (Mo.App. 1980). Generally, a directed verdict will not be granted to the party carrying the burden of proof. *Ramsey v. Vance,* 622 S.W.2d 774, 776 (Mo.App.1981). However, an exception to this general rule is recognized when plaintiff's evidence establishes that recovery is barred by an affirmative defense. *See Kauble v. MFA Mutual Ins. Co.,* 637 S.W.2d 831, 833 (Mo.App.1982); *Overfield v. Garner,* 595 S.W.2d 446, 447 (Mo.App.1980).

■ Similarly, in limited situations the trial court is justified in directing a verdict for defendant based on estoppel. *Kap-pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.,* 402 S.W.2d 49, 56 (Mo.App.1966). A party

claiming estoppel carries the burden of proving his claim by clear and convincing evidence. *Willman v. Phelps*, 631 S.W.2d 63, 67 (Mo.App.1982). However, "[w]here the facts are undisputed and only one inference may be drawn therefrom, the question of estoppel is one of law," and a directed verdict is proper. *Kap-pel Fabrics*, 402 S.W.2d at 56 (quoting 31 C.J.S. Estoppel § 163, p. 784).

■ A party claiming equitable estoppel must demonstrate three essential elements: (1) an admission, statement or act that is inconsistent with the claim subsequently asserted and sued upon; (2) action by the party claiming estoppel on the faith of such admission, statement or act; and (3) injury to that party if the other party is permitted to contradict or repudiate his prior admission, statement or act. *Willman*, 631 S.W.2d at 67. The doctrine of equitable estoppel forecloses a party from speaking the truth in his behalf after another has, in good faith, acted upon repudiated earlier statements or actions. *Id.*

■ As part of plaintiff's evidence, Mr. Anderson testified and admitted that he instructed Gaylan to pay all commissions to Mid–Continent. Mr. Anderson further admitted that Gaylan, according to his instructions, began paying all commissions owed under the parties' agreement directly to Mid–Continent. Finally, Associates introduced Gaylan's interrogatory answers, particularly Gaylan's response to an interrogatory wherein Gaylan states it paid over $150,000 in commissions to Mid–Continent from 1984–1987. This evidence, presented by plaintiff, demonstrates the three essential elements of estoppel described above.

Associates directs this court's attention to Mr. Anderson's statement, made prior to the merger, that "if the merger does not work out ... I want to make sure that I get my two percent [commission]." Associates apparently believes this statement nullifies the later instructions to pay all commissions to Mid–Continent. However, the contingency Mr. Anderson spoke of, the merger of Associates and Mid–Continent Marketing, occurred. Following Mr. Anderson's statement, Associates instructed Gaylan, by letter, to pay all commissions to Mid–Continent.

Associates also claims that Gaylan failed to demonstrate any injury had the court entered judgment against Gaylan for the commissions claimed. In particular, Associates contends that Gaylan's interrogatory answer concerning the amount of commissions paid to Mid–Continent does not specifically prove that Gaylan paid Mid–Continent the two percent commission from Payless Cashways' corporate program. The interrogatory answer reveals that Gaylan paid commissions to Mid–Continent in an amount exceeding $150,000 after Mr. Anderson's departure from Mid–Continent. This evidence, together with Mr. Anderson's testimony that Gaylan began paying all commissions owed under the parties' agreement directly to Mid–Continent, creates a reasonable inference that the commissions paid to Mid–Continent included the two percent commission from Payless Cashways' corporate program. Plaintiff's evidence established that Associates' directive prompted Gaylan to pay all commission due to Mid–Continent. Associates' claim for the commissions owed from the date Anderson's relationship with Mid–Continent was terminated is inconsistent with the prior directive, and payment of the commissions by Gaylan a second time would be damaging to Gaylan. Equitable estoppel precludes Associates from claiming the commissions after Gaylan followed Associates' subsequently repudiated instructions and paid Mid–Continent. Associates' claim was barred by equitable estoppel as a matter of law. The trial court's judgment is affirmed.

All concur.