In re ESTATE OF Bessie I. HICKS.

Frances A. ROVE, Conservator for the Estate, Respondent,

v.

James R. and Donna D. HICKS, Respondent,

Opal Fothergill, Appellant.

No. WD 49157.

Missouri Court of Appeals, Western District.

April 18, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied July 25, 1995.

---

Alan B. Gallas, Kansas City, for appellant.

Teresa Christian–Bingh, Frank J. Murphy, William L. Hubbard, Kansas City, for respondents.

Before ELLIS, P.J., and BERREY and SMART, JJ.

SMART, Judge.

This case involves the issue of whether a sister of an incapacitated person, hoping to ultimately inherit from her protectee sister, is entitled to intervene in a proceeding for discovery of assets filed by the protectee's conservator against another relative. Opal Fothergill appeals from the order of the probate court denying her motion to intervene in the proceedings for the discovery of assets of Bessie Hicks, a protectee for whom a conservator has been appointed pursuant to § 475.010 *et seq.*, RSMo 1986.

We issued an opinion in this appeal on January 31, 1995, in which we affirmed the holding of the trial court that Ms. Fothergill had no right to intervene. Thereafter, upon consideration of appellant's motion for rehearing, we granted rehearing and withdrew our opinion. Now, having further considered the matter, we issue this opinion reversing the trial court.

Bessie Hicks is the widow of James M. Hicks, who died on October 20, 1991. In January of 1988, Bessie suffered a stroke and, as a result, was unable to speak or write. Bessie has nine living siblings, including appellant, Opal Fothergill. Bessie currently resides in a nursing home, where she has lived since August 1991.

On November 19, 1991, Virgil Cole, one of Bessie's brothers, and Ms. Fothergill filed a petition for appointment of guardian and conservator for Bessie's estate. In the petition, Mr. Cole offered to serve as the guardian and Ms. Fothergill was designated as the person having custody of Bessie. On December 13, 1991, Bessie's stepson, James R.

Hicks (hereafter referred to as "J.R." Hicks), filed a competing petition for appointment of guardian and conservator for Bessie's estate. A hearing was conducted on December 23, 1991 on the two applications for appointment. At the hearing, J.R. Hicks testified that in February, 1989, James M. and Bessie Hicks had added J.R. Hicks to their joint bank accounts. This was done, according to J.R. Hicks, so that J.R. could handle the funds for Bessie's benefit on the death of James M. J.R. also testified that a few days before his father's death, he transferred into his own name and that of his wife more than $85,-000.00 in funds from the joint bank accounts of James M. and Bessie Hicks. J.R. also testified that on August 22, 1991, James M. gave him a quitclaim deed which purported to sever James M.'s spousal interest in the family residential farm from that of his wife and to create a joint tenancy in such interest for himself and his son.

On January 6, 1992, the trial court adjudicated Bessie to be totally incapacitated and disabled. The trial court directed Mrs. Hicks' conservator to determine whether the transfers of property by James M. Hicks to his son prior to his death were legally effective and, if not, to institute appropriate action to effect a recovery of the property on behalf of Bessie's estate. On February 3, 1992, the conservator filed a petition for discovery of assets against J.R. and Donna Hicks. The first two counts sought an accounting for the transfer of $85,000.00 from the joint bank accounts of James M. and Bessie Hicks. The third count alleged that the transfer of interest in the family farm was without consideration and sought quieting of title. The Hicks' answer pleaded, *inter alia,* that the transferred funds were being held in trust by J.R. and Donna Hicks for the lifetime and benefit of Bessie Hicks.

On May 4, 1992, Frank J. Murphy, Jackson County Public Administrator, was appointed permanent guardian and conservator for Bessie, and was substituted as petitioner on the petition for discovery of assets.[1] Mr. Murphy was granted leave to amend the

petition to include three additional bank accounts from which J.R. had allegedly transferred additional funds, amounting to approximately $114,000.00. The petition also alleged that J.R. and Donna Hicks had expended no funds for the care of Bessie since May 4, 1992, the date of Murphy's appointment, but that the conservatorship had expended $77,616.38 for her care and was expending at the rate of approximately $40,000.00 per year. The petition prayed for restitution of the expenditures and sought to impose a constructive trust on the supposed trust assets for past and future care of Bessie. Mr. and Mrs. Hicks filed an answer to the petition, admitting the additional transfers, pleading that the funds were held in an oral trust and counterclaiming for the value of personal efforts made by them for Bessie's care. On the eve of trial, a settlement was achieved. Mr. Murphy and the defendants filed a joint petition for approval of settlement agreement and executed a settlement agreement contingent on court approval. The proposed settlement agreement specified that J.R. Hicks would register the trust, which contained approximately $192,773.00, with the probate division, so that the trust would be subject to its jurisdiction. The agreement further provided that during Bessie's life, her expenses would be paid equally from the Hicks Trust and from Bessie's conservatorship estate. Upon Bessie's death, any remaining trust funds would be paid to J.R. and Donna Hicks or their heirs. A hearing on the settlement agreement was set for February 4, 1994.

On January 28, 1994, Ms. Fothergill filed her motion to intervene under Rule 52.12(a). In the motion, Fothergill alleged that as the natural sister of Bessie, she has an expectancy of inheritance from Bessie's estate. She alleged further that she has been injured in her legitimate expectancies by the alleged wrongful actions of J.R. Hicks and she stands to receive little or no inheritance as a result of the agreement which the conservator and the defendants have proposed, which would allow any of the remaining trust funds to be paid to Mr. and Mrs. Hicks. She

---

1. After this case was initially submitted, Mr. Murphy resigned as Public Administrator of Jackson County. Frances A. Rove now serves as conservator of the estate of Mrs. Hicks, and has been substituted herein for Mr. Murphy.

prayed for judgment voiding the purported oral trust and directing J.R. and Donna Hicks to account to the estate for the properties seized or, in the alternative, that the purported oral trust be reformed to compel restoration to the estate, upon Bessie's death, of sums not expended for the maintenance of Bessie during her life. On February 24, 1994, the trial court denied Ms. Fothergill's motion to intervene. The trial court found that appellant had no property interest in the estate of Bessie Hicks. The court noted that: "Once the fiduciary has initiated the action, there is no need for a 'person interested in expectancy' to participate in the proceedings, if that person's interest is only that of an 'expectancy of inheritance.'" Opal Fothergill appeals from the trial court's judgment.

### Intervention of Right

Appellant claims that the trial court erred in denying her motion to intervene because Rule 52.12(a) mandated intervention as of right, in that appellant had a recognized interest in an expectancy of inheritance which stood to be prejudiced by imminent disposition in her absence and that no present parties were adequately representing her interest.

Rule 52.12(a) provides the criteria that must be present to allow one the right to intervene into an action:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The first issue is whether there is a statute granting appellant an unconditional right to intervene. Appellant points to § 475.160 and claims that under that statute she has standing to bring an action for discovery of assets, and that therefore she has an unconditional right to intervene in this action. The statute states as follows:

Any conservator, protectee, creditor or other person, including a person interested in expectancy, reversion or otherwise, who claims an interest in property which is claimed to be an asset of the estate of a protectee or which is claimed should be an asset of such an estate, may file a verified petition in any court having jurisdiction of such estate seeking determination of the title and right of possession thereto. The petition shall describe the property, if known, shall allege the nature of the interest of the petitioner and that title or possession of the property, or both, are being adversely withheld or claimed. The court shall proceed on such petition in accordance with the provisions of section 473.340, RSMo.

Standing to *bring* an action is not necessarily the same thing as standing to *intervene* in an action which has already been properly brought by another party. The interest of the drafters of this provision was to ensure that there were an adequate number of persons with standing to institute an action against any person suspected of withholding the assets of a protectee. The statute was not necessarily intended to allow every potentially interested person to intervene once an action had already been brought. Therefore, we do not agree with Ms. Fothergill's contention that the statute grants an unconditional right to *intervene*.

Where no statute grants an unconditional right, in order to be entitled to intervention as of right, appellant must show three elements: (1) an interest relating to the property or transaction which is the subject of the action; (2) an impaired ability to protect that interest; and (3) inadequate representation of his or her interest by the existing parties. *In re Estate of Potashnick,* 841 S.W.2d 714, 719 (Mo.App.1992). An interest relating to the property does not include a mere "consequential, remote or conjectural possibility of being affected as a result of the action," but must be a "direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment." *Id.* The trial judge

may deny a motion to intervene if even one of the enumerated elements is not present. The party seeking intervention bears the burden of proof in the intervention action. *Id.*

### Present Property Interest

■ Appellant claims that § 475.160 grants her standing to intervene because it treats her as having a direct interest in the property of Bessie Hicks. Appellant is unable to point to any case authority for the proposition that the statute (or its predecessor) have been so construed. The general rule is that "no one is an heir to the living." *In the Matter of Hancock,* 834 S.W.2d 239, 241 (Mo.App.1992). Section 475.160, however, creates exceptions to the general rule that a person with only an expectancy has no legal standing. Although the statute does not specifically deal with intervention, the terms of the statute serve to vest Ms. Fothergill with an enforceable right if she can show a legitimate expectancy by virtue of a will or through the intestacy of Ms. Hicks.

### Impairment of Ability to Protect Interest

The next issue in the matter of determining her right to intervene is whether denial of intervention may impair her ability to protect her alleged interest in the expectancy. There would seem to be no doubt that denial of intervention will impair her ability because the resolution of the conservator's claim will clearly bind Ms. Fothergill. A denial of intervention in this case causes a loss of a potential claim for Ms. Fothergill because the alleged undue influence involves inter-vivos non-probate transfers rather than a will of Mrs. Hicks. The conservator must take legal action now rather than allowing a personal representative to take action after the death of Mrs. Hicks. Yet, the action of the conservator will bind Ms. Fothergill. The issues in the discovery of assets will be final and concluded by the conservator. Any attempt to assert such a cause after Mrs. Hicks' death will run into the bar of *res judicata.* Consequently, the ability of Ms. Fothergill to protect her interest will be impaired by a denial of intervention.

### Adequate Representation of Interest

The fact that the conservator must be primarily concerned with preserving assets for Mrs. Hicks does not mean that the conservator must ignore Mrs. Hicks' estate planning interests. *See* Borron, 5C *Missouri Practice–Probate Law and Practice* § 2055 (2d ed. 1992); *Willman v. Phelps,* 631 S.W.2d 63 (Mo.App.1982). The conservator presumably has a duty, in connection with negotiating a settlement with Hicks, to reasonably consider any information bearing on the subject of Mrs. Hicks' estate planning desires. However, even if the conservator has such a duty, such fact does not guarantee that Ms. Fothergill's interests are adequately represented by the conservator. A personal representative seeking to carry out an estate plan is generally acting also to further the interests of the heirs, especially when pursuing an action for discovery of assets. The conservator, on the other hand, is concerned with protecting and preserving the assets of the protectee. Section 475.130 RSMo, 1986. Any duty regarding preservation of the protectee's estate plan is subservient to that of maintenance and use of assets for the protectee while alive. The conservator's interests are fundamentally so different from Ms. Fothergill's that it is not reasonable to conclude that Ms. Fothergill's interests will be adequately represented by the conservator.

### Conclusion

We conclude that the trial court erred in denying intervention. We reverse the order of the trial court denying intervention to Ms. Fothergill. We remand the case to the trial court. The trial court is directed to allow Ms. Fothergill to intervene. The order of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur.