In the ESTATE OF Mildred
M. HONSE, Deceased.

No. SD 31853.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 1, 2013.

Emily L. Woodward, Rolla, MO, for Appellant.

Albert A. Crump, Jr., Vienna, MO, for Respondent E.J. Meyer.

Amanda L. Grellner, Linn, MO, for Respondents Sandra Schoene and Debra Clark.

Nancy Rowden Acting Pro Se.

JEFFREY W. BATES, J.

Does the court-ordered sale of property by a conservator to support his incompetent ward completely adeem a specific bequest or devise to a beneficiary of the ward's trust? Our answer on these facts is "No." Instead, the bequest or devise is adeemed only to the extent the sale proceeds are used to support the ward or pay estate expenses and, after the ward's death, the balance of the identifiable proceeds passes to the beneficiary.

## I. Factual and Procedural Background

The record on appeal consists solely of the legal file, from which our summary of the facts is drawn. Donald Honse (Donald) and Mildred Honse (Mildred) were husband and wife.[1] The couple had five biological children: Sandra Kay Schoene (Schoene); Debra Lynn Clark (Clark); Nancy Ann Rowden (Rowden); Douglas Andrew Honse (Douglas); and Gregory Steven Honse (Gregory). Hereinafter, we collectively refer to Schoene, Clark and Rowden as "Daughters."

Gregory died prior to 2005 and left no surviving issue. On February 24, 2005, Donald and Mildred executed a joint, revocable inter vivos trust denominated as the Honse Family Trust (the Trust). Article III, § A.2 of the Trust gave the Trustee the discretionary authority to use "so much of the income and principal of the trust estate as the Trustee deems necessary or appropriate for the care, comfort, medical, or surgical attention, maintenance, or support" of a mentally or physically incapacitated settlor. Article V contained provisions describing how the trust estate should be distributed after both of the settlors died. Section C of that article stated:

C. **DISTRIBUTION OF REMAINDER OF TRUST ESTATE** Upon the death of both of the Settlors and after payment of final debts and expenses and after the specific bequests of personal property, per Article V, Paragraph A above, the Trustee shall distribute the remainder of the Trust Estate, together with any undistributed net income, as follows:

1. To Settlors' son, **Douglas A. Honse,** because he farms the real estate owned by Settlors, the following:

   a. Settlors' farm except for Settlors' residence and the immediate land around it of at least one (1) acre to be surveyed and legally described at the expense of the Trust.

   b. Farm operational outbuildings; vehicles (including all pickups owned by Settlors); tractors, implements, and equipment; tools and supplies; and crops growing and being stored including hay and other cattle feed.

2. To Settlors' daughters, **Sandra K. Schoene, Debra L. Clark,** and **Nancy A. Rowden,** the following in equal shares:

   a. Settlors' residence and the immediate land around it of at least one (1) acre to be surveyed and legally described at the expense of the Trust.

   b. Any passenger vehicle owned by Settlors (to be contrasted with pickup trucks which were to remain with the farm).

   c. Furniture, appliances, and household effects in Settlors' residence.

1. Because several persons mentioned in this opinion share the same surname, we refer to them by their first names for purposes of clarity.

Donald and Mildred were named as co-trustees of the Trust. Article IX of the Trust named Douglas as the first successor trustee and Edwin Honse (Edwin) as the second successor trustee.

On August 3, 2005, Donald and Mildred executed a first amendment to the Trust (August 2005 amendment). This amendment changed Article III, § C so that it stated:

C. **DISTRIBUTION OF REMAINDER OF TRUST ESTATE** Upon the death of both of the Settlors and after payment of final debts and expenses and after the specific bequests of personal property, per Article V, Paragraph A above, the Trustee shall first make the following specific bequests and distributions and distribute the remainder of the Trust Estate, together with any undistributed net income, as follows:

1. The following specific property to Settlors' son, **Douglas A. Honse,** *per stirpes,* because he has been farming the real estate owned by Settlors along with them and assisted in caring for and running errands for Settlors, the following:

   a. Settlors' farm except for Settlors' residence and the immediate land around it of at least one (1) acre (or more as may be required by various zoning requirements) to be surveyed and legally described at the expense of the Trust.

   b. Farm operational outbuildings; vehicles (including all pickups owned by Settlors); tractors, implements, and equipment; tools and supplies; livestock; and crops growing and being stored including hay and other cattle feed.

2. The following specific property to Settlors' daughters, **Sandra K. Schoene, Debra L. Clark,** and **Nancy A. Rowden,** in equal shares, *per stirpes:*

   a. Settlors' residence and the immediate land around it of at least one (1) acre to be surveyed and legally described at the expense of the Trust.

   b. Any passenger vehicle owned by Settlors (to be contrasted with pickup trucks which were to remain with the farm).

   c. Furniture, appliances, and household effects in Settlors' residence.

3. The rest, remainder, and residue of the Trust Estate together with any undistributed income shall be distributed in equal shares to each of Settlors' daughters, **Sandra K. Schoene, Debra L. Clark,** and **Nancy A. Rowden.** *per stirpes.*

In September 2007, the Missouri Department of Health and Senior Services filed a petition requesting that the Public Administrator of Maries County be appointed as the guardian and conservator of both Donald and Mildred. The petition alleged that Donald and Mildred were unable to care for themselves because they suffered from senile dementia. Donald died on October 20, 2007. On November 16, 2007, a Maries County circuit judge determined that Mildred was a totally incapacitated and totally disabled person by reason of her mental and physical conditions. The court appointed Maries County Public Administrator Eugene Meyer (hereinafter referred to as Conservator Meyer) as Mildred's guardian and conservator. He was issued letters of guardianship and conservatorship on November 27, 2007.

On December 19, 2007, Conservator Meyer filed a petition requesting that the probate division of the Maries County Cir-

cuit Court assume jurisdiction over the Trust and appoint Conservator Meyer as the successor trustee. The petition alleged that: (1) co-trustee Donald was deceased; (2) co-trustee Mildred was incapacitated; (3) first successor trustee Douglas was unable to serve because he was incarcerated in a federal prison in Arkansas; (4) second successor trustee Edwin was deceased; (5) the bulk of the assets available for Mildred's care were in the Trust; (6) the court had the authority to assume jurisdiction over the Trust; and (7) it was in Mildred's best interest for the court to appoint Conservator Meyer as successor trustee. After conducting a hearing, the court entered an order on January 30, 2008, stating it would "assume jurisdiction of the Honse Family Trust ... and that the same shall be administered under the conservatorship proceeding for Mildred M. Honse, Protectee, subject to the terms of said trust." Conservator Meyer was appointed successor trustee and given full and complete authority to administer the trust assets as part of the conservatorship estate. He was ordered to include his activities with trust assets in the annual reports he filed as part of Mildred's conservatorship estate.

Mildred's incapacity made it necessary for her to be placed in a nursing facility. In February 2008, Conservator Meyer filed a petition requesting the authority to sell household goods and furniture, three motor vehicles, 21 cows, hay and farm machinery in order to generate cash to pay for Mildred's care and estate expenses. In March 2008, the court entered an order approving that request. In September 2008, Conservator Meyer filed a petition alleging that all funds generated by the sale of personal property would be ex-

hausted soon and that the real estate also needed to be sold to pay for Mildred's care and estate expenses. That request was approved. Later in September 2008, the court entered an order requiring Conservator Meyer to obtain two written appraisals and authorizing him to sell the real estate at a private sale for cash.

In December 2009, Conservator Meyer filed a petition requesting authorization to complete the real estate sale. The petition alleged that: (1) the estate's personal property had been exhausted; (2) the real estate appraisals had been obtained; and (3) the Department of Social Services had filed a lien against the real estate to secure payment of debts incurred in providing medical assistance to Mildred. On December 31, 2009, the court entered an order authorizing the sale of the real estate for the dual purposes of satisfying debts against the estate and paying expenses necessary for Mildred's health, care and well-being.

On March 30, 2010, Conservator Meyer filed a report stating that the real estate had been sold for $345,000. The real estate was sold in two parcels. The first parcel consisted of the house and four acres, which sold for $75,000. The second parcel consisted of the remaining 100 acres of farmland, which sold for $270,000.

Conservator Meyer used $93,934.05 of the sale proceeds to pay off the lien, which was satisfied of record on June 10, 2010. Mildred died on October 15, 2010. On November 22, 2010, Conservator Meyer filed his final settlements of the conservatorship estate. The settlements showed that there was $221,868.69 in cash to be distributed.[2] The court approved the final settlement on November 30, 2010.

2. This sum was comprised of $221,435.97 held in the Honse Family Trust accounts and $432.72 held in the conservatorship account.

On January 19, 2011, Conservator Meyer filed a petition asking to close the estate. The petition requested that no letters of administration be issued and that the court issue an order of distribution due to uncertainty about how the proceeds should be divided. Douglas requested that the remaining cash be divided by tracing the funds from the sale of specific assets list in Art. III, § C.1 and C.2. Daughters requested that they receive the remaining cash pursuant to the residuary clause in Art. III, § C.3 of the Trust.

On December 30, 2011, the trial court entered an order of distribution. After payment of costs, fees and creditors' claims, the court ordered that the $221,435.97 in cash in the Honse Family Trust accounts be distributed in equal shares to Daughters pursuant to the residuary clause of the Trust. The court determined that the specific bequests and devises in Art. III, § C.1 and C.2 had lapsed because those assets had been sold in order to pay for Mildred's care. This appeal followed.

## II. Standard of Review

Our review in this court-tried case is governed by Rule 84.13(d) and is well established. *Grider v. Tingle*, 325 S.W.3d 437, 440 (Mo.App.2010); *Crossland v. Thompson*, 317 S.W.3d 635, 637 (Mo.App. 2010).[3] "The trial court's judgment will be sustained unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Crossland*, 317 S.W.3d at 637. We review questions of law *de novo*. *Strader v. Progressive Ins.*, 230 S.W.3d 621, 623 (Mo.App.2007).

## III. Discussion and Decision

■ Douglas presents one point for decision. He contends the trial court misap-

plied the law by ordering Conservator Meyer to distribute the remaining cash from the Honse Family Trust accounts pursuant to the residuary clause of the Trust. Douglas argues that: (1) the language of Art. III, § C.1 of the Trust demonstrates the settlors' intent, while they were competent, to devise and bequeath certain real and personal property to Douglas because of past services rendered to the settlors; (2) this remained the settlors' intent until Donald died and Mildred was adjudged incompetent; and (3) the court-ordered sale of that property by Conservator Meyer to pay for Mildred's care and estate expenses should not completely adeem the specific devises and bequests to Douglas because that would frustrate the distributive scheme in the settlors' trust.

■ "The paramount rule of construction in determining the meaning of a trust provision is that the grantor's intent is controlling." *Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon*, 231 S.W.3d 158, 173 (Mo.App. 2007). The August 2005 amendment to the Trust stated that the settlors wanted to give specific real and personal property "to Settlors' son, **Douglas A. Honse**, *per stirpes*, because he has been farming the real estate owned by Settlors along with them and assisted in caring for and running errands for Settlors...." We agree with Douglas that this language indicates an intent by the settlors to devise or bequeath the described property to Douglas based upon past services rendered to the settlors. That conclusion follows from the settlors' use of past tense language in the amendment and their intent to leave the aforementioned property to Douglas' de-

3. All references to the rules are to the Missouri Court Rules (2012). All references to statutes are RSMo (2000) unless otherwise indicated.

scendants *per stirpes* if he predeceased the last of the settlors. Both of these statements would be inconsistent with an intention that Douglas receive that property only if he continued to provide services until the last settlor died, as Daughters contend.

We also agree with Douglas that the record contains nothing to suggest the settlors' stated intent changed before Donald died and Mildred became incompetent. The dispositive question then becomes: what effect did the court-ordered sale of the real and personal property by Conservator Meyer to pay for Mildred's care and estate expenses have upon the specific devises and bequests in Art. III, § C.1 and C.2 of the Trust? The answer to this question is indicated by *Buder v. Stocke,* 343 Mo. 506, 121 S.W.2d 852 (1938).

In *Buder,* Jacob Stocke, Sr. (Testator), executed his will in 1926. *Id.* at 855. One provision of the will left all of Testator's interest in a brick company to his son, Jacob Stocke, Jr. (Beneficiary). *Id.* at 856. Testator was adjudged incompetent in 1929, and a guardian was appointed for him. The guardianship continued until he died in 1931. *Id.* at 855. At the time of Testator's death, he was the sole owner of the brick company. *Id.* at 856. The guardian had liquidated the brick company by placing the real estate in Testator's name and by selling all of the company's personal property. *Id.* at 858. The money was used to maintain Testator and to pay debts. *Id.* at 857–58. Our Supreme Court held that the guardian's liquidation of the brick company did not work a complete ademption of the specific bequests and devises to Beneficiary in the will. *Id.* An ademption generally requires some act by the testator equivalent to revocation or indicative of an intent to revoke. *Id.* at 857. The court reasoned that "[t]he weight of authority, with which the deci-

sions in this state agree, is against holding that an ademption has resulted, from the dealings of a guardian of an insane or incompetent testator with his ward's property, where the physical facts make it possible to hold otherwise." *Id.* Under such circumstances, an ademption occurs only when the bequeathed or devised property, and everything received for it, has completely disappeared from the testator's estate before his death. *Id.* The court explained the rationale for this rule:

The reasons for holding against an ademption by changes due to a guardian's dealings with property (which fit the situation in this case exactly) were well stated *In Re Estate of Henrietta Cooper,* 95 N.J.Eq. 210, 123 A. 45, 30 A.L.R. 673, as follows [page 47]: "A committee in lunacy is a mere conservator of his ward's estate, and his possession of that estate vests him with no power either intentionally or unintentionally to change his ward's duly expressed purposes respecting the disposition of her estate after her death. To hold otherwise would be to say that *he may arbitrarily revoke her will,* so far as it provides specific legacies, *and may transfer the property which is the subject thereof from the persons designated by the testatrix to the residuary legatee,* or—if there be none—to the next of kin.

*Id.* at 858 (italics in original). Accordingly, our Supreme Court held that there was no ademption of the specific property bequeathed or devised to Beneficiary, except to the extent such property had been sold and the proceeds used to support Testator and pay his debts. *Id.* at 858–59.

The holding in *Buder* was applied to property held in trust in *Willman v. Phelps,* 631 S.W.2d 63 (Mo.App.1982). There, Clara Willman established five Totten Trust savings accounts for the benefit of Thomas Phelps between 1966 and 1973.

In 1976, Willman had to be placed in a nursing home, and Phelps was appointed as Willman's guardian. *Id.* at 64. Willman's estate consisted of $69,000, which was held in the trust accounts. Phelps withdrew the money and placed it in guardianship accounts. *Id.* at 64–65. He expended some of the money for Willman's care and support. She died intestate in 1979, leaving approximately $59,000 of that money unspent. *Id.* at 65. Phelps asked the probate court to distribute all of the money to him. Willman's other relatives requested intestate distribution. *Id.* After the trial court ordered intestate distribution, Phelps appealed. The eastern district of this Court reversed the judgment. The appellate court agreed with precedent from other jurisdictions holding that:

> [T]he guardian, whose function is to conserve the ward's property and support the ward, lacks authority to alter an act taken by the ward prior to incompetency, such as revoking a trust established by the ward. Where funds existing in a revocable trust created by the ward are needed for the ward's maintenance, however, the guardian may apply to the court for permission to withdraw sufficient funds to support the incompetent suitably. In such cases, the guardian's power to withdraw is limited to sums needed to provide for the ward's welfare, and the beneficiary of the trust is entitled to the amount remaining in the account at the death of the depositor.

*Id.* at 65–66. Relying upon *Buder*, the eastern district held that Phelps was entitled to receive the remaining funds:

> Our conclusion is consistent with the fundamental Missouri principle that the guardian of an incompetent "is a mere conservator of his ward's estate, and his possession of that estate vests him with no power either intentionally or unintentionally to change his ward's duly ex-

pressed purposes respecting the disposition of her estate after her death." *Buder v. Stocke,* 343 Mo. 506, 121 S.W.2d 852, 858 (1938) (quoting *Re Estate of Cooper,* 95 N.J.Eq. 210, 123 A. 45 (1923)); § 475.130.2, RSMo 1978. The situation in this case can best be analogized to the sale by a guardian of a property owned by the ward, which the ward, while competent, has designated as a specific bequest or devise. *It has been held uniformly that sale by the guardian does not work an ademption of the bequest or devise, which would have occurred if the testator had sold the property. The bequest or devise is adeemed only to the extent that the sale proceeds are used to support the ward and meet the expenses of the guardianship; the balance of the proceeds passes by will to the designated beneficiary.*

*Id.* at 66 (italics added). Daughters argue, however, that *Buder* and *Willman* do not apply to the case at bar. They advance three arguments, which we shall consider in turn.

■ First, Daughters argue that the judgment can be sustained by § 456.4–412 RSMo Cum.Supp. (2005) which states:

> 1. The court may modify the dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.

> 2. The court may modify the management or administrative terms of a trust if modification will further the purposes of the trust.

> 3. Upon termination of a trust under this section, the trustee shall distribute

the trust property in a manner consistent with the purposes of the trust.

*Id.* Daughters argue that Douglas' failure to continue to farm the land authorized the trial court to modify the terms of the trust. We find no merit in this argument because we see no indication in the record that the trial court ever intended to modify the terms of the trust. When the trial court decided to exercise jurisdiction over the trust assets, the court specifically ordered Conservator Meyer to administer those assets subject to the terms of the trust. When Mildred died, it also appears that the trial court attempted to follow, rather than modify, the distributive provisions in Art. III, § C in deciding who should receive the remaining assets.

Second, Daughters argue that the judgment can be sustained by analogy to § 474.465 governing wills. The argument fails because § 474.465 must be read *in para materia* with § 474.460, which states:

> When any estate is devised to any child, grandchild or other relative of the testator, and the devisee dies before the testator, or is treated as if he predeceased the testator, leaving lineal descendants who survive the testator by one hundred twenty hours, the descendants shall take the estate, real or personal, as the devisee would have done if he had survived the testator by one hundred twenty hours.

*Id.* "This statute was enacted to counteract the harsh common law rule that a bequest lapses if a beneficiary predeceases a testator." *Lindsey v. Burkemper,* 107 S.W.3d 354, 357 (Mo.App.2003). This statute "prevents partial intestacy by preventing lapse of a legacy and giving the legacy to a relative." *Royston v. Watts,* 842 S.W.2d 876, 879 (Mo.App.1992). Section 474.465 states:

1. Except as provided in section 474.460, if a devise, other than a residu-

ary devise, fails for any reason, it becomes a part of the residue.

2. Except as provided in section 474.460, if the residue is devised to two or more persons and the share of one of the residuary devisees fails for any reason, his share passes to the other residuary devisee, or to other residuary devisees in proportion to their interest in the residue.

*Id.* The purpose of this statute is to prevent "a residuary lapse and intestacy by passing that portion proportionately to the remaining legatees." *Royston,* 842 S.W.2d at 879. Because Douglas did not predecease Mildred, § 474.460 and § 474.465 have no application.

Third, Daughters argue that the judgment can be sustained by § 461.033.5, which states that "[a] transfer during the owner's lifetime of the owner's interest in property, with or without consideration, terminates the beneficiary designation with respect to the property transferred." *Id.* We find no merit in this argument. This statute, which is part of the Nonprobate Transfers Law, does not apply to transfers upon the death of the owner under an inter vivos trust established by that individual. *See* § 461.005(7) RSMo Cum.Supp. (2005). Moreover, the Nonprobate Transfers Law simply does not apply to the court-ordered sale of real and personal property by a conservator pursuant to statutory authority conferred by § 475.200.

Based upon *Buder* and *Willman,* we hold that the court-ordered sale by Conservator Meyer of the real and personal property specifically bequeathed and devised to Douglas and Daughters in Art. III, § C. 1 and C.2 of the Trust were adeemed only to the extent that the sale proceeds were used to support Mildred and pay the conservatorship expenses. The balance of the identifiable proceeds of

those sales belonged to the specified beneficiaries. Therefore, the trial court erred in ordering that the remaining funds generated by the sale of the trust assets be distributed only to Daughters pursuant to the Trust's residuary clause. The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

DANIEL E. SCOTT, P.J. and DON E. BURRELL, C.J., CONCUR.