James SCHLERETH, Appellant/Cross–Respondent,

v.

Jane Tillman HARDY, Respondent/Cross–Appellant,

Jefferson County Collector of Revenue, Defendant.

No. SC 89402.

Supreme Court of Missouri, En Banc.

March 31, 2009.

**48**

Stanley D. Schnaare, Michelle L. Mellendorf, The Schnaare Law Firm, PC, Hillsboro, MO, for Appellant/ Cross-Respondent.

Earl G. Burton, III, Webster Groves, MO, for Respondent/ Cross-Appellant.

MICHAEL A. WOLFF, Judge.

### Introduction

This case echoes a familiar refrain in the lore and constitutional law of notice: Due process requires notice, but what notice will do?

James Schlereth bought a piece of property that Jefferson County sold because the owner was delinquent in property taxes. Schlereth thereafter sent a notice of redemption rights to the tax-delinquent former owner by certified mail. The postal service attempted delivery twice.[1]

Schlereth's notice was addressed correctly to the tax-delinquent former property owner at her residence. The former owner acknowledges that she knew of the attempts to deliver the certified mail. But, she says, a certified mail delivery attempt is not constitutionally sufficient notice—even with two delivery attempts. Even though the addressee in this quiet title proceeding admits receiving two delivery notifications, this Court is obligated to follow the decision of the United States Supreme Court in *Jones v. Flowers*, which holds that when certified mail is returned unclaimed, due process requires the state to take additional reasonable steps to notify the property owner. 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

### Factual and Procedural History

Jane Tillman Hardy, who owned property in Jefferson County but did not occupy it, failed to pay property taxes in 1999, 2000 and 2001. The Jefferson County collector of revenue sold the property for

---

**1.** In Jane Hardy's response to Schlereth's request for admissions, filed in February 2005, Hardy admitted that delivery was attempted three times. In subsequent filings, Hardy states that "upon further review of the Post Office receipt [she] now believes that June 1, 2004 was the date mail was returned to [Schlereth] unclaimed, not the date of an attempted delivery." The certified mail receipts indicate delivery attempts on May 1 and May 21, and the findings of fact and conclusions of law by the trial court state that the "Postal Service twice attempted delivery of the letter to Defendant Hardy at her home."

taxes in August 2002 following publication of the sale. Though no issue is raised as to the notice by publication of the tax sale, there is nothing in the record to show that Hardy was made aware of the tax sale by this published notice.

Schlereth purchased the property at the tax sale and paid the county's revenue collector $9,500.75. The taxes owed on the property totaled $2,139.25.

Hardy appeared at the collector's office in March 2004—about a year and a half after the tax sale of her property—and paid the taxes due on the real estate for the years 2002 and 2003. This payment was not part of any redemption action. Hardy maintains that, at the time she paid the taxes in the collector's office, she was not aware that the property had been sold at a tax sale.

In May 2004, Schlereth sent Hardy a notice of redemption rights by certified mail. The notice was addressed to Hardy at her suburban St. Louis residence. Hardy received two delivery notifications at her residence but failed to pick up the certified mail on both occasions. Schlereth's notice to Hardy was returned to Schlereth as "unclaimed" on June 1, 2004. In this proceeding, Hardy admits she received the notifications of the attempts to deliver certified mail.

Hardy did not redeem the property within two years of the tax sale; so, in August 2004, Schlereth obtained a collector's deed to the property and recorded it. Section 140.410.[2] The next month, Schlereth filed this quiet title action. The collector consented to it, but Hardy answered and filed a counterclaim against Schlereth asking that the court set aside the tax sale and return the property to Hardy. Hardy requested that, if the court awarded the property to Schlereth, the court order pay-

ment to Hardy of the $1,251.70 in taxes from 2002 and 2003 that she paid in March 2004. Hardy filed a cross-claim against the collector of revenue asking that the court order the surplus held from the tax sale be paid to Hardy. Pursuant to section 140.600, Hardy offered repayment to Schlereth for the amount to be expended for the property as well as interest and costs.

The trial court entered summary judgment in favor of Schlereth on his claim for quiet title and against Hardy on her counterclaim. The court denied Hardy's motion for summary judgment on the cross-claim against the collector of revenue and the alternative counterclaim. On April 24, 2006, the collector paid the tax sale surplus to Hardy and moved to dismiss the cross-claim as moot. Hardy voluntarily dismissed her cross-claim. The trial court in November 2006 entered a consent judgment awarding Hardy the $1,251.70 she had paid in property taxes for 2002 and 2003.

Hardy filed a motion to amend the judgment and a motion for new trial claiming that the notice Schlereth sent her regarding her redemption rights violated her due process rights. The court granted the motion for new trial. Both parties then filed motions for summary judgment. The trial court granted Hardy's motion for summary judgment, citing *Jones v. Flowers,* and ruled that the collector's deed for the property was void and that Hardy's redemption period had not expired because of insufficient notice. Schlereth appeals to this Court.

Because this case involves a challenge to the validity of the statute prescribing certified mail notice, this Court has jurisdiction. Mo. Const. art. V, section 3.

**2.** All statutory references are to RSMo 2000 unless otherwise provided.

### Were the notice requirements of due process met when certified mail was sent but not claimed?

Section 140.405 sets forth the notice requirements for a tax purchaser to acquire a deed to property purchased at a tax sale. Section 140.405 provides:

At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. *Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address.* (Emphasis added).

Hardy contends that *Jones v. Flowers* renders service of notice solely through unclaimed certified mail insufficient to meet the requirements of due process. *Jones* addressed the issue, which had not been resolved in prior cases, as to whether the government must take additional steps when a certified-mail notice of a tax sale has been returned undelivered. 547 U.S. 220, 223, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

In *Jones*, a husband and wife divorced and the husband subsequently vacated the home the two owned. The husband continued to make mortgage payments after vacating, and the mortgage company made the tax payments. After the husband paid off the mortgage in 1997, the property taxes went unpaid. The commissioner of state lands sent notice of the tax delinquency by certified mail to the husband at the home that the husband no longer occupied. The mail was returned unclaimed. The commissioner subsequently published notice of the sale. No bids were submitted, and the government negotiated a private sale to Flowers. The commissioner then sent a certified mail notice of the sale to the home where the husband no longer resided so that he would be notified of his redemption rights. That notice also was returned unclaimed, and the property was sold to Flowers. Flowers then served notice of unlawful detainer on the husband's daughter residing at the property, who notified Jones, the husband, of the tax sale. Jones filed suit, claiming that his due process rights had been violated by the failure to serve notice. *Id.*

The Supreme Court, in a majority opinion by Chief Justice Roberts, held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Because additional reasonable steps were available, the state was required to take them. *Id.* at 225, 126 S.Ct. 1708. In *Jones*, the Court said if the certified mail was unclaimed, re-sending the notice by regular mail, posting the notice on the property or addressing otherwise undeliverable mail to "occupant" may suffice. *Id.* at 234–35, 126 S.Ct. 1708. In any event, the Supreme Court held, the state is obligated to take steps that would "increase the likelihood that an owner would be notified that he was about to lose his property, given the failure of a letter deliverable only to the owner in person." *Id.*

The *Jones* holding is a direct descendant of the seminal case about constitutional notice, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), but with an added twist. Under *Mullane*, the adequacy of notice is assessed by what is known *before the notice is sent*. *Jones*, however, holds that

the government must act on information received *after the notice was sent,* that is, that the notice was returned unclaimed.

"An elementary and fundamental requirement of due process," the Supreme Court held in *Mullane,* ". . . is notice *reasonably calculated to apprise* interested parties of the pendency of the action and afford them the opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. 652 (emphasis added). In this case, there is no question that Schlereth, proceeding under section 140.405, takes on the governmental obligation to give notice that satisfies due process. The redemption notice by certified mail under section 140.405 is the first and only realistic attempt actually to notify the property owner; after *Mullane,* no one pretends that the notice by publication of a tax sale was reasonably calculated to give notice to Hardy.

To evaluate the reasonableness of the notice, the *Mullane* court put forward the standard of whether "the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* Here, sending certified mail to Hardy's known and actual residence, which included two notifications of attempted delivery, seems reasonably calculated to notify Hardy of her redemption rights—until the sender learns that the notice was unclaimed. That is the *Jones* extension of *Mullane.*

■ *Jones* did not concern itself with why the addressee failed to claim the certified letter. In fact, the Supreme Court allowed for the possibility that the addressee, like Hardy, simply would ignore the requests to pick up the certified letter. *Id.* at 235. *Cf. State v. Elliott,* 225 S.W.3d 423 (Mo. banc 2007)[3].

Was the certified mail method of notice "substantially less likely to bring home notice than other of the feasible and customary substitutes?" It is undisputed that the tax collector and Schlereth knew Hardy's correct address. Under *Jones,* the least that could be expected is that a regular-mail letter be sent; if not returned, the sender could presume that it was received where there is no question about the correctness of the address. *See, e.g., Clear v. Missouri Coordinating Bd. for Higher Educ.* 23 S.W.3d 896, 900 (Mo.App.2000) ("There is a presumption that a letter duly mailed has been received by the addressee. When proof of proper mailing is adduced, the presumption may be rebutted by evidence showing that the mailing was not received. Evidence of non-receipt does not nullify the presumption but leaves the question for the determination of the finder of fact under all the facts and circumstances of the case.") (internal citations omitted). The majority opinion in *Jones* endorses the use of regular mail as a follow-up to an unclaimed certified-mail letter. If Schlereth had sent the notice by regular mail as follow-up to the unclaimed

**3.** This Court upheld a certified-mail notice in *State v. Elliott,* 225 S.W.3d 423 (Mo. banc 2007). In *Elliott,* the director of revenue sent a taxpayer, by certified mail, a notice that the taxpayer was being assessed income taxes where the taxpayer failed to file a Missouri tax return. The statute authorizes the director, upon notice, to estimate the taxpayer's liability. Section 143.611. The state has an interest in the economical and expeditious determination of tax liability that justifies the notice in *Elliott.* The state, however, has no such interest in expeditiously cutting off the redemption rights of a property owner in favor of a tax sale purchaser. The interests of the state must be balanced with those of the individual property owners. Further, in the instance of unpaid income taxes, the taxpayer has remedies available after the state files suit, such as filing an amended return. In the case of property sold at a tax sale, once the redemption period has lapsed, the property owner has no further remedies.

certified letter, Hardy would be hard-pressed to rebut the presumption that she received the notice if the letter was not returned as undeliverable—the outcome of this case would be different.

 Because *Jones* makes clear that the notice prescribed by section 140.405 is constitutionally inadequate in these circumstances, it is up to the legislature to determine what notice should be sent when the certified mail notice is returned unclaimed.[4]

 *Jones* compels the grant of summary judgment in Hardy's favor, even though the effect may be to encourage parties to evade certified-mail notices. That said, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226, 126 S.Ct. 1708. The statute, section 140.405, requires Schlereth to provide notice to those with interests in the property; the notice—which is meant to inform those such as Hardy whose interests are to be extinguished—must meet constitutional standards.

For nearly 60 years, *Mullane* has alerted American lawyers that notice provisions prescribed in state statutes may not be constitutionally sufficient. *Mullane* held that a statutorily prescribed notice by publication was insufficient to cut off the rights of beneficiaries to make claims against their trustee as to the management of funds in a common trust. Schlereth followed section 140.405 precisely and sent certified mail to Hardy at her residence address, and the postal service documented two attempts at delivery. But *Jones* compels Schlereth, who is required by the statute to give notice, to take additional steps to ensure adequate notice when he learns that the certified mail notice is unclaimed. The burden of providing a constitutionally adequate notice falls squarely on Schlereth—the notice by publication of the tax sale of the property would not meet the longstanding requirements of notice explained in *Mullane*, especially given that the tax collector had Hardy's correct address.

 As a matter of prudence as well perhaps as constitutional necessity, therefore, a person who sends notice by certified mail—even where (as here) that is the only method the statute prescribes—may be well advised to use a process server to ensure that the best notice practicable is delivered if the addressee does not sign for it. The interest of a tax sale buyer, such as Schlereth in this case, is to quiet title and settle his interest in the property so that his title cannot be set aside on the

4. Certainly, the gold standard of notice is service of process by the sheriff or other process server, as provided for in civil actions by Rule 54.01. Courts routinely presume that legal process delivered to a person's usual place of abode under Rule 54.01 is sufficient. *See* Rule 54.20 ("When the person to be served or an agent authorized to accept service of process for the person to be served, either within or outside the state, shall refuse to receive copies thereof, the offer of the server to deliver copies thereof, and such refusal, when these facts are shown on the server's return, shall constitute proof of service. When service is made by mail pursuant to Rule 54.12, a notation made pursuant to applicable United States Postal Service regulation that the certified or registered mail has been refused shall constitute proof of service."); *Russ v. Russ*, 39 S.W.3d 895, 898 (Mo.App.2001); *Silinzy v. Williams*, 247 S.W.3d 595, 599 (Mo.App.2008). In this case, however, the mail does not appear to have been refused; it was returned unclaimed. Hardy's failure to claim the mail does not constitute an affirmative refusal to receive notice in the way that a party's refusal to accept service of process constitutes refusal. Hardy was not offered a certified letter by the postal worker that she refused to accept—she simply failed to retrieve a letter, the substance of which was unknown to her.

grounds that the notice—which he is required to send to the tax-delinquent former owner as to her redemption rights—was constitutionally insufficient. Some follow-up notice was required, whether by regular mail, posted notice calculated to notify the owner or service by a process server. In this case, however, Schlereth did no follow up.

 The dissent in *Jones* would not require any additional steps for a person such as Hardy, who failed to pay property tax bills and then failed to pick up certified mail notices. 547 U.S. at 239, 126 S.Ct. 1708 *et seq.* An unclaimed certified-mail letter necessitates further efforts to provide reasonable notice, the majority held, and this Court is obligated to follow majority decisions of the United States Supreme Court, not dissenting opinions. As in *Jones*, there is nothing here to indicate that the addressee would know what the certified-mail notice contained.

The circuit court correctly concluded that the notice of redemption rights, as prescribed in section 140.405, is insufficient. In the absence of a legislated corrective, those who use governmental authority to take property, even in tax delinquency situations, will have to take heed of the notice requirements of the *Mullane* through *Jones* line of constitutional cases.[5]

### Conclusion

The circuit court's judgment holding Schlereth's collector's deed to be void and determining that Hardy's period for redemption of the property has not expired is affirmed.[6] In light of this Court's decision, the points raised by Hardy in her cross-appeal need not be addressed.

All concur.

---

**5.** *See Dusenbery v. U.S.*, 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Greene v. Lindsey*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); and *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

**6.** The circuit court's judgment stated that to redeem the property, Hardy would need to pay the following amounts, pursuant to section 140.340:

 a. The $2,140 in taxes, interest, penalty and certification that Schlereth paid.
 b. The $7,361.50 surplus paid by Schlereth paid at the tax sale.
 c. Interest on the foregoing amounts from August 26, 2002, is not allowed under section 140.340 because no interest was stated in the certificate of purchase.

 d. The real estate taxes stipulated by Schlereth and Hardy to have been paid by Schlereth subsequent to the tax sale together with interest at the rate of eight percent per annum from the date Schlereth paid until Hardy pays, as follows:

| Tax Year(s) | Amount | Date of Payment |
|---|---|---|
| 2002-2003 | $1,251.79 | Nov. 7, 2006 |
| 2004 | $ 576.21 | Dec. 31, 2004 |
| 2005 | $ 567.82 | Dec. 31, 2005 |
| 2006 | $ 563.47 | Dec. 31, 2006 |
| 2007 | $ 653.09 | Dec. 31, 2007 |

 e. Schlereth's additional costs of sale, as follows, (interest is not allowed under section 140.340 because no interest rate is stated in the certificate of purchase):

| Cost | Amount | Date of Payment |
|---|---|---|
| Title search | $ 125 | Apr. 2, 2004 |
| Recorder of deeds | $ 27 | Aug. 25, 2004 |
| Publication | $ 25 | Mar. 25, 2005 |

The circuit court declared that on receipt of these amounts, Schlereth (and his spouse, if any) shall execute a quitclaim deed to the property in favor of Hardy.