**Terry W. Dixon and Cynthia CROSSLAND, Plaintiffs–Appellants/Respondents,**

v.

**Thomas D. THOMPSON, Defendant–Cross–Appellant/Respondent.**

Nos. SD 29900, SD 29913.

Missouri Court of Appeals, Southern District, Division One.

July 30, 2010.

---

John Alan Cowherd, Mt. Vernon, MO, for Appellant/Respondent Terry W. Dixon.

James Michael Riehn, Cassville, MO, for Appellant/Respondent Cynthia Crossland.

Craig Frederick Lowther, Springfield, MO, for Cross–Appellant/Respondent.

JEFFREY W. BATES, Presiding Judge.

This case arises from a delinquent land tax auction, conducted pursuant to Chapter 140 RSMo, at which Terry Dixon and Cynthia Crossland (referred to individually by their surnames and collectively as Purchasers) bought real estate previously owned by Thomas Thompson (Thomas).[1] In an action to quiet title, the trial court found in favor of Purchasers, but they were ordered to pay Thomas for improvements to the real estate. Purchasers appealed from the ruling concerning the improvements. Thomas cross-appealed. He contends Purchasers failed to provide proper notice of Thomas' redemption rights as required by § 140.405. This Court agrees with Thomas. Therefore, the judgment is reversed, and the cause is remanded with instructions.

## I. Standard of Review

■ Our standard of review in a court-tried action is well established. The trial court's judgment will be sustained unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law.

---

1. All references to statutes are to RSMo Cum. Supp. (2004) unless otherwise specified. Because the transcript contains references to

*Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Drake Development & Constr., LLC v. Jacob Holdings, Inc.,* 306 S.W.3d 171, 173 (Mo.App.2010).

## II. Factual and Procedural Background

In September 1995, Thomas purchased a home and surrounding property located in Crestwood West subdivision near Shell Knob, Missouri (hereinafter, the property), from Ed and Ella Evans (the Evanses). Thomas was represented at the closing by attorney David Cole (Cole). At the time of purchase, a deed of trust was placed on the property in favor the Evanses, who lived in Aurora, Missouri. Thomas testified that the deed of trust remains on the property, and he still makes payments to the Evanses.

Thomas and his father Vern Thompson (Vern) were partners operating a livestock farm known as Thompson Hereford Farms. Vern lived in Truro, Iowa. The partners provided all necessary funding for the property in Shell Knob, including paying all taxes and bills for the property. The partners used Vern's address in Truro (the Truro address) as the mailing address for such items.

Prior to 2000, Thomas received his tax statements for real estate taxes on the property from the Barry County Collector's Office (the Collector's Office) at an address in Hatfield, Missouri (the Hatfield address). In 2000, Thomas updated his address with the Collector's Office to the Truro address. Thomas testified that the Collector's Office successfully changed his address to the Truro address on the personal property tax rolls. Thomas received personal property tax statements each

both Thomas Thompson and his father, Vern Thompson, we will refer to them by their given names.

year and paid them. The Collector's Office, however, did not change the address on the real estate tax rolls. The address on that tax roll was left as the old Hatfield address. Consequently, Thomas did not receive the real estate tax statements and did not pay them in 2001 through 2003. At some point in 2004, Thomas decided to sell the property. He placed a for-sale sign, which included his 641 area code Iowa telephone number, in his yard.

In August 2004, the Barry County Collector (the Collector) sold the property to recover the delinquent real estate taxes. Purchasers were the high bidders and paid $6,800 to the Collector.[2] On August 23, 2004, Purchasers received a "Receipt of Bid" and a "Certificate of Bid" from the Collector. On August 25, 2005, Purchasers received a Collector's Deed. From August 2004 through August 2005, Purchasers were represented with respect to the tax sale issues by attorney Cole.

In September 2005, Purchasers filed a petition to quiet title. Thomas did not file an answer or appear at the trial held on November 22, 2005. That same day, Purchasers obtained a judgment from the trial court divesting Thomas of title to the property and confirming valid title in Purchasers. Within a few days, Thomas learned of the judgment and obtained counsel. On November 28, 2005, Thomas' attorney sent Purchasers a letter, which, *inter alia*, offered to repay Purchasers the charges they had incurred for taxes on the property together with interest, "in exchange for a complete release and novation of the [Collector's] deed." When that offer was not accepted, Thomas filed a motion to set aside the judgment. After a hearing, Thomas' motion was denied. On appeal, this Court reversed and remanded with directions for the trial court to sustain Thomas' motion to set aside the judgment and grant him a new trial. *Dixon v. Thompson*, 235 S.W.3d 568, 574 (Mo.App. 2007).

In September 2008, Thomas filed a four-count, first amended counterclaim. Count I asked the trial court to quiet title. Count II asked the court to invalidate the Collector's Deed and declare Thomas the sole owner of the property. Counts III and IV requested alternative relief. Count III asked the court to award Thomas the value of his improvements to the property pursuant to § 524.160 RSMo (2000). Count IV asked the court to award Thomas the difference in the property's value before and after the improvements, whichever was greater, to cure any unjust enrichment. In March 2009, the court conducted a bench trial and heard evidence on Purchasers' petition to quiet title and Thomas' counterclaim. The following is a summary of the evidence at trial concerning Purchasers' efforts to provide notice to Thomas of his redemption rights at his last known available address.

As noted above, attorney Cole represented Purchasers during the tax sale. Cole's legal assistant, Lisa Deffenbaugh (Deffenbaugh) testified on behalf of Purchasers. Deffenbaugh said that she "did most of the work" when Cole handled a tax sale. Dixon gave Deffenbaugh the Purchaser's Receipt of Bid, Certificate of Purchase, and an instruction letter from the Collector. She then performed a title search and reviewed the results. On May 17, 2005, she sent the statutory notice (the notice) by certified mail to: (1) the Evanses, who held the publicly-recorded deed of trust on the property, at an Aurora,

---

**2.** The bid amount bid included: (1) payment of real estate taxes that had accrued from 2001—2003, which totaled $2,053.21; (2) an advertising fee of $35; and (3) a surplus of $4,711.79.

Missouri address; and (2) Thomas at the Hatfield address, which was obtained from real estate records in the Collector's Office. The notice stated:

You are hereby notified, pursuant to R.S.Mo. 140.405, that the undersigned did on the 23rd of August, 2004, purchase the above-described real estate at tax sale for non-payment of county real estate taxes; that after 90 days from the date of this notice, the undersigned will apply to the county collector of Barry County, Missouri, at Cassville, Missouri, for a collector's deed for taxes conveying said real estate to the undersigned, or his assigns; that should you have any right to redeem your security or claim on the real property, you should exercise such right prior to the expiration of said 90 day period.

Both the notice to the Evanses and the notice to Thomas were returned, "not deliverable as addressed, unable to forward." Thomas did not receive the statutory notice mailed to the Hatfield address.

In May 2005, Dixon obtained Thomas' 641 area code telephone number from the for-sale sign in Thomas' yard and delivered it to Cole's office. Deffenbaugh testified that she then attempted to call Thomas, which is something she did not typically do on a tax sale. No one answered when Deffenbaugh called that number, so she left a message. On May 26, 2005, she received a phone message about the call and was asked to call back at a different 641 area code number. When she called that number, she spoke with Vern. Deffenbaugh indicated the following occurred during that conversation. "I said, 'There are some problems with [Thomas'] taxes. If you could have [Thomas] return our call or he might check into that.' I did not

give a lot of information because it was not the owner of the property." Vern responded by saying "[t]here's no problem with the taxes." Neither person said anything more after that comment. Deffenbaugh could not remember whether she asked Vern for Thomas' current address. Deffenbaugh thought she probably left her number with Vern, but she could not remember for sure.[3]

Deffenbaugh testified that, other than talking to Vern by telephone, she made no other efforts to contact or locate Thomas. Deffenbaugh admitted that Cole did not ask her to find Thomas. Neither Cole nor Deffenbaugh performed an internet search or looked within the office's own files to find Thomas' 1995 contact information.

Cole testified that he normally seeks the last known address for individuals at the Collector's Office, and he followed his "normal procedure" in this case. After the letter to the Hatfield address was returned, Cole said he did not have another address for Thomas. On cross-examination, Cole acknowledged that his firm closed the transaction when Thomas purchased the property and signed a deed of trust in the mid–1990s. Cole admitted Thomas' file, that included at least initial contact information from which to follow up, was still in his office. Although he knew Thomas was not claiming mail at the Hatfield address, Cole admitted he did "no independent investigation to try to find" Thomas. Cole knew about the phone number delivered by Dixon. He instructed Deffenbaugh to call the number, which was an "unusual step" for Cole. He could not remember if he ever asked Dixon for a new address for Thomas, but he stated he

---

**3.** Vern testified he did not remember receiving any such a telephone call from Deffenbaugh. Thomas testified that he did not know about any such telephone call until after the fact.

relied on Dixon to give him all of the information Dixon had to find Thomas.

Dixon testified that he lived near the property and was a landowner, along with Crossland, in the Crestwood West subdivision. Dixon admitted he was a member of the board of directors for the Crestwood West Lot Owners Association, Inc. (the association) during 2003, 2004 and 2005. He knew there was a homeowners' association directory (directory) produced by the association. The directory for August 2004 had the following entry: "Thomas Thompson, [the Truro address], [641 area code phone number], [417 area code number]." Based on the information provided to the association, Thomas received the water bill for the property from the association at the Truro address. Those bills were paid by Thomas.

Dixon admitted he had a 2004 directory on top of his refrigerator. Dixon also admitted that Thomas' correct address, the Truro address in Iowa, was on file with the association. Nevertheless, Dixon did not obtain any other address for Thomas and did not provide the Truro address to Cole. Dixon also testified that he believed Vern was the actual owner of the property. Dixon admitted he had called Vern for approval on a dock proposal and knew how to reach Vern "when [Dixon] needed him." Dixon did not call Vern, however, to discuss the tax sale or obtain a good address for him.

Dixon further testified that he knew Thomas could redeem the property within one year, and that he "didn't want to know" who was maintaining the property during the year after the tax sale. During that time, Thomas and his family installed new shutters and siding over Christmas 2004, and a new deck in the summer of 2005. Dixon also admitted he noticed someone was mowing the yard at the property during the year after the tax sale, but never wondered who was doing the mowing. Dixon knew someone was paying for the utilities and water during the year after the tax sale, but he did not check to see who was doing so. Despite this knowledge, the only thing Dixon did when Thomas' statutory notice came back undelivered was to pass along the number on the property's for-sale sign to Cole's office. Dixon did nothing else to find a good address for Thomas.

Thomas testified about numerous contacts he had with Dixon over several years. Thomas testified about an incident that occurred at a boat dock in June 2003:

Q. Can you tell the Court about— about this instance at the dock?

A. We were down there. Mr. Dixon, obviously, he'd come down. He's pretty distinguished. You can know who he is. You could recognize him if you saw him once. We were down there. He asked who I was, and I told him that I owned a house up above him, I had—I can be there because you have to be a lot owner or a homeowner or with somebody that owns to be down there on the docks or be using the facilities there. And I told him who I was, where I live. I don't live only probably a hundred yards or so up the road from him. And then he—he told me—then, he goes, "Well, if you guys don't quiet down, I'll call the law on you." So right there, he—like I say, he had asked who I was, you know, did I own a home there. Yes, I did.

Q. And you're sure this was Terry Dixon?

A. Yes.

During July 2005, Dixon drove by the property while Thomas was building a deck on the house. Dixon saw Thomas

and waved at him. This was after Dixon and Crossland had purchased the property at the tax sale. Dixon did not stop, talk to Thomas or ask why he was building a deck on a house that Dixon believed he and Crossland had purchased. At no time after August 23, 2004, when Dixon saw Thomas did Dixon ever mention anything about the tax sale, the Collector's Deed, or this case. Dixon never called, wrote or left notes on the property.

In June 2009, the trial court entered judgment in favor of Purchasers. The trial court found that "the last known available address was obtained from the Collector's office." The court decided Purchasers "made reasonable efforts" in updating the address because Dixon obtained the telephone number from the for-sale sign on the property and delivered it to Cole's office. The court reasoned that "[Deffenbaugh] called the number and left a message stating there were problems with the taxes on the real estate in question." [4] The court found that Thomas "chose to ignore the telephone call regarding the tax problems." [5] The court decided Purchasers acted in good faith and exercised due diligence in obtaining Thomas' last known available address to notify him of his right to redeem the property. The court quieted title to the property in Purchasers. The court also found that Thomas was entitled to reimbursement for improvements to the property and rendered a money judgment in his favor for $15,845.49. This appeal and cross-appeal followed. Additional facts necessary to the disposition of the case are included below.

4. Although the phone call was to Vern, the trial court imputed knowledge of the tax problems to Thomas because he and Vern were partners.

5. At trial, Thomas testified that he believed he had paid all of his real and personal property

## III. Discussion and Decision

Purchasers present four points on appeal. Each point alleges that the trial court erred in its determination that Thomas was entitled to reimbursement for improvements to the property. Thomas presents seven points in his cross-appeal. Because Thomas' first point has merit and is dispositive of all issues in these two appeals, we need not address the parties' other points.

In Thomas' first point, he contends the trial court erred in determining that Purchasers acted in good faith and exercised due diligence in providing notice of Thomas' redemption rights at his last known available address, as required by § 140.405. In pertinent part, this statute states:

Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. *Notice shall be sent by certified mail to any such person, including one who was*

taxes when he paid the tax bill he received from the Collector's Office. In the judgment, the court found that "it was [Thomas] who did not exercise due diligence and acted in bad faith believing that he was receiving a windfall regarding the tax bill."

*the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address.* Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

*Id.* (emphasis added). "A delinquent tax sale purchaser's failure to comply with any of the above notice requirements will result in its losing all interest in the real estate as a matter of law." *CedarBridge, LLC v. Eason,* 293 S.W.3d 462, 466 (Mo. App.2009) (italics in original); *see Valli v. Glasgow Enterprises, Inc.,* 204 S.W.3d 273, 276–77 (Mo.App.2006). If proper notice is not given, then the collector's deed is void. *Schlereth v. Hardy,* 280 S.W.3d 47, 53 (Mo. banc 2009).

In *Bullard v. Holt,* 158 S.W.3d 868 (Mo. App.2005), this Court explained what is meant by "last known available address" in § 140.405:

> In order to satisfy the statutory requirement that notice be given to the owner at the "last known available address," we hold that the purchaser must use due diligence to notify the owner at the last known "available" address. What that means is that the word "available" in section 140.405 encompasses the concept that reasonable efforts should be used to notify the owner that someone else is claiming an interest in the property.

*Id.* at 871.

The trial court found that Purchasers used due diligence to notify Thomas at his last known available address. Thomas contends this ruling was erroneous for two reasons.

Thomas first argues that the judgment is not supported by the evidence because Purchasers' decision to send notice only to the Hatfield address on file at the Collector's Office was not reasonable, given the other means readily available to Purchasers to ascertain Thomas' actual address. This Court agrees.

In *Bullard,* the purchaser sent the requisite notice only to the address listed by the county collector's office, and that notice was returned as undeliverable. Purchaser was aware of a for-sale sign on the property listing the realty contact information and had actually contacted the realty office to inquire about purchasing the property. The title owner's correct address was contained in the realty company's records. *Bullard,* 158 S.W.3d at 870. Purchaser, however, did not contact the realty company to update the title owner's address for sending the notice. Purchaser also admitted she made no further effort to notify the title owner of his rights to redeem the property. Purchaser claimed she had no further statutory duty to provide notice to the title owner of the property under § 140.405. The issue before this Court was "whether a purchaser complies with the statute by only sending notice to the address on the tax records when the purchaser has actual notice that the address is incorrect and when the correct address is readily attainable." *Id.* at 871. This Court concluded that the purchaser did not comply with the statute, explaining that "[w]e acknowledge that due diligence will be a factual question that varies from case to case, but we have no problem holding, under the facts of this case, that the purchaser did not make any reasonable effort to notify the titled owner of the property about her claimed interest in the property." *Id.* at 871–72; *see also Schlereth,* 280 S.W.3d at 52–53 (statutory notice of redemption rights under § 140.405 sent to former property owner via certified mail, which was returned unclaimed, was insufficient notice under due process clause; some follow-up is required to en-

sure notice reaches former property owner).[6] We reach the same conclusion here.

Purchasers sent the notice only to the address listed by the Collector's Office and knew the notice was returned as undeliverable. Although Purchasers did obtain the telephone number from the property's for-sale sign, calling that number did not result in an updated address. Both Dixon and Cole had several other opportunities to update Thomas' address, but neither acted on any of those opportunities that were easily accessible to them. Thomas' correct address was in the 2004 homeowner's association directory on top of Dixon's refrigerator, but he did not use it to ascertain Thomas' true address. Dixon also was on the association's board, and its records likewise contained Thomas' correct address. Dixon did not consult those records. Dixon testified that he believed Vern owned the property, and Dixon had contacted Vern for other purposes such as boat dock issues. Dixon did not contact Vern to obtain an updated address. Dixon ignored the obvious fact that the property was being maintained and improved after the August 2004 tax sale occurred. He did not visit the property or make any inquiry about who was doing the maintenance or improvements. He did not ask who was paying the water and utility bills during the redemption period. Dixon admitted that he "didn't want to know" this information. In addition, Cole had Thomas' file from his earlier purchase of the property, which contained contact information for him. Cole did not even check his own file

to find a correct address for Thomas. The record abounds with evidence that Purchasers could have found Thomas' correct address with very little effort and provided him with the statutory notice to which he was entitled pursuant to § 140.405. By sending the notice only to the address listed on the real estate tax rolls at the Collector's Office, Purchasers failed to act in good faith and exercise due diligence in obtaining Thomas' last known available address so as to notify him of his right to redeem the property. *See Bullard*, 158 S.W.3d at 871–72. The trial court's contrary finding is not supported by the evidence.

■ Thomas also argues that the trial court misapplied the law in relying on Deffenbaugh's phone message regarding the property's tax problems as being sufficient notice under § 140.405. Thomas asserts that this telephone message was insufficient because Deffenbaugh did not tell Vern when the redemption period ended. Once again, we agree with Thomas.

After purchasing the property at the tax sale, Purchasers were not entitled to a deed to the real estate unless they provided Thomas with the notice required by § 140.405. *Glasgow Enterprises, Inc. v. Rossel*, 209 S.W.3d 498, 503 (Mo.App.2006). Deffenbaugh's telephone conversation does not satisfy the statutory requirements because the notice was neither personally served upon Thomas nor sent to him by certified or regular mail. *Id.*[7] In addition,

6. In *Schlereth*, the Court explained that a tax sale buyer is well advised to ensure notice reaches the former owner because "[t]he interest of the tax buyer ... is to quiet title and settle his interest in the property so that his title cannot be set aside on the grounds that the notice—which he is required to send to the tax-delinquent former owner as to [his or her] redemption rights—was constitutionally insufficient." *Schlereth*, 280 S.W.3d at 52–53.

7. As noted in *Schlereth*, if the certified mail notice is unclaimed, a tax purchaser would be well advised to personally serve the notice using a process server or send the notice by regular mail, with the presumption of receipt that arises from such action. *Schlereth*, 280 S.W.3d at 52–53.

Deffenbaugh did not tell Vern that: (1) the property had been sold at a tax sale; (2) Purchasers intended to apply for a collector's deed; or (3) how long Thomas had to redeem the property. Thus, the purported "notice" given orally by Deffenbaugh was insufficient as a matter of law. *Id.*; *Drake Development & Constr., LLC v. Jacob Holdings, Inc.*, 306 S.W.3d 171, 174 (Mo.App.2010) (holding that a redemption notice must inform persons of the time frame for redemption); *Hames v. Bellistri*, 300 S.W.3d 235, 239 (Mo.App.2009) (notice failed to state the correct redemption period).

For both of the reasons discussed above, the trial court erred in determining that Purchasers exercised good faith and due diligence in providing notice to Thomas at his last known available address. *See Schlereth*, 280 S.W.3d at 52–53; *Glasgow*, 209 S.W.3d at 503; *Bullard v. Holt*, 158 S.W.3d 868, 871–72 (Mo.App.2005).

■ Purchasers argue, however, that Thomas is not entitled to have the Collector's Deed set aside as void because he failed to comply with the provisions of § 140.600 RSMo (2000), which states:

1. No suit or action in any of the courts of this state, either at law or in equity, shall hereafter be maintained by any person or corporation, against any other person or corporation, for the determination of the title to, or for the recovery of the possession of, any lands which shall have been sold for taxes, or any interest in any such lands, or for the setting aside or cancellation of any tax deed or sale of land for taxes alleged to have been void, voidable or defective, unless such person or corporation so seeking to recover such lands, or some interest therein, or the setting aside of such tax deed or tax sale, shall in his petition offer to refund to the defendant therein, or to such other person or corporation, from whom and against whom such recovery is sought, in such action, all taxes paid by such defendant, or other persons, and his grantors, remote or immediate, or by those under whom he claims, together with interest thereon from the date of payment of such taxes to the date of the judgment in such action.

2. No actual tender shall be required to be made by such plaintiff or other person seeking such recovery or cancellation of such deed, but it shall be deemed sufficient if an offer to pay the same, as soon as the amount thereof shall be ascertained, shall be made and set out in such petition.

3. All courts before which any such action may be brought or maintained shall, if the judgment in such action be adverse to the defendant, or defendants therein, and the recovery of such land, or any interest therein, be adjudged or decreed, find and adjudge by its decree or judgment the amount of money due to the defendant, or to other persons, on account of taxes or interest thereon paid as aforesaid by defendant or his grantors as aforesaid, and all such courts may, if such relief be prayed for in the answer, or the other pleading of the defendant, or other person, entitled to reimbursement, adjudge and decree that the amount so found by the court, or a jury, shall be and constitute a lien upon the lands recovered or in controversy.

*Id.* The following additional facts are relevant to this argument.

In Thomas' counterclaim, he did not include an offer to refund all taxes paid by Purchasers. At trial, the November 28, 2005 letter in which Thomas offered to refund Purchasers all the taxes paid, plus interest, was admitted in evidence. Thomas also testified that such an offer had been made and continues to be made.

Thomas later moved that the pleadings be amended to conform to the evidence, and the court granted Thomas' motion. On appeal, Purchasers do not challenge the court's rulings admitting evidence of the offer or amending the pleadings. Instead, Purchasers maintain Thomas is barred from recovery under § 140.600.1 RSMo (2000) because he failed to include the offer "in his petition."

Thomas argues that, because the pleadings were amended to conform to the evidence, the pleadings contain the offer and thereby meet the statutory requirement of § 140.600.1 RSMo (2000). *See Rudd v. Scott,* 351 Mo. 1206, 175 S.W.2d 774, 775–76 (1943) (although offer not made in petition, evidence of offer was admitted at trial; the petition was considered amended to conform to the proof). Under the circumstances, Purchasers' argument that Thomas is barred from recovery completely lacks merit. *Id.* Moreover, even if no offer had been made for the repayment of taxes and interest, the trial court could cure any deficiency by ordering the party seeking relief to pay back the taxes and interest. *See, e.g., Glasgow Enterprises, Inc. v. Kusher,* 231 S.W.3d 201, 204 (Mo. App.2007) ("the trial court could satisfy the statute's intent where the party had not"); *Greenwich Condominium Ass'n v. Clayton Inv. Corp.,* 918 S.W.2d 410, 415 (Mo.App. 1996) (similar holding).

Thomas' first point is granted. Because Purchasers failed to comply with the notice provisions under § 140.405, they lost all interest in the property. § 140.405; *Drake Development & Constr., LLC v. Jacob Holdings, Inc.,* 306 S.W.3d 171, 174 (Mo. App.2010). Accordingly, the Collector's Deed to Purchasers is void. *Schlereth,* 280 S.W.3d at 53. In conformity with Thomas' offer at trial, he must reimburse Purchasers for "all taxes paid ... together with interest thereon from the date of payment of such taxes to the date of the judgment in such action." § 140.600.1 RSMo (2000); *CedarBridge, LLC v. Eason,* 293 S.W.3d 462, 470 (Mo.App.2009); *Rudd,* 175 S.W.2d at 776; *Heppler v. Esther,* 534 S.W.2d 533, 537 (Mo.App.1976). If necessary, the court may take additional evidence on this issue.

The trial court's judgment is reversed, and the cause is remanded. On remand, the court is instructed to: (1) vacate the June 2009 judgment; (2) declare the Collector's Deed void; (3) quiet title to the property in Thomas; (4) determine the amount Thomas owes Purchasers for taxes they paid, plus interest; and (5) enter judgment in favor of Purchasers and against Thomas for that sum.

BARNEY and BURRELL, JJ., concur.