**Shirley Ann JACO, Plaintiff–Respondent,**

v.

**MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES, Defendant–Appellant.**

No. SD 31453.

Missouri Court of Appeals,
Southern District,
Division One.

March 16, 2012.

Motion for Rehearing and Application for Transfer Denied April 6, 2012.

Chris Koster, Attorney General, and, John R. Phillips, Assistant Attorney General, Jefferson City, MO, for Appellant.

Kyle E. Walsh, Poplar Bluff, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

The Missouri Department of Health and Senior Services ("DHSS") appeals a judgment entered by the circuit court ("the trial court") that ordered DHSS to grant Shirley Ann Jaco ("Plaintiff") the opportunity to request a hearing on DHSS's decision to place her on the state's Employee Disqualification List ("EDL"). Plaintiff's petition alleged that she was unable to request such a hearing because Plaintiff never received the notice DHSS claims it sent Plaintiff informing her of her right to request a hearing.

In a single point relied on, DHSS claims

[t]he trial court erred in holding that [Plaintiff] received inadequate notice ... because the U.S. and Missouri Supreme Courts have determined that the notice DHSS gave is constitutionally adequate in that DHSS took the additional reasonable step of sending notice via regular first[-]class mail as well as via certified mail, and DHSS was entitled to rely

on the presumption that a properly mailed item is received by the addressee.

Because DHSS failed to prove that it actually delivered its notice to the United States Postal Service ("the Postal Service") for delivery and the trial court was also entitled to believe Plaintiff's testimony that she never actually received any such notice, we affirm the trial court's judgment ordering DHSS to re-serve its notice and allow Plaintiff to request a hearing.[1]

### Applicable Principles of Review & Governing Law

■■■ "In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Director of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.* at 308. "In keeping with well-settled Missouri law, this Court defers to the trial court's assessment of the credibility of the witnesses before it. Further, the trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *MC Dev. Co., LLC v. Central R–3 Sch. Dist. of St. Francois Cnty.*, 299 S.W.3d 600, 603 (Mo. banc 2009) (citations omitted). "Because appellate courts are primarily concerned with the correctness of the result reached by the trial court, we are not bound by its rationale and may affirm the judgment on any grounds sufficient to sustain it." *Russo v. Bruce*, 263 S.W.3d 684, 687 (Mo.App. S.D. 2008).

■■■ " '[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference' implicates constitutionally protected liberty interests." *Jamison v. State of Missouri, Dept. of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 407 (Mo. banc 2007) (quoting *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). "If the government wishes to deprive a person of a liberty or property interest, due process requires the government to provide notice and the opportunity for a meaningful hearing appropriate to the nature of the case." *Stone v. Missouri Dept. of Health & Senior Servs.*, 350 S.W.3d 14, 27 (Mo. banc 2011).

If a determination is made that an individual's name should be placed on the EDL, "that person shall be notified in writing mailed to his or her last known address" of the allegation, the fact that the person's name will be added to the list barring a successful challenge, the consequences of being on the list, the period of time that the name will be listed, and the rights and procedures for challenging the allegation. Section 660.315.[2]

---

1. Plaintiff did not file a brief. She is not required to do so, but its absence deprives us of any argument Plaintiff might have made. *In re Estate of Klaas*, 8 S.W.3d 906, 908 (Mo.App. S.D.2000). DHSS makes no challenge in this appeal to the timeliness of Plaintiff's petition, the trial court's authority to hear the matter, or the form of relief granted by the trial court.

2. All statutory references are to RSMo Cum. Supp.2010. The EDL is a list of individuals who worked for "an in-home service provider agency" and "who have been finally determined by the department [of health and senior services] to, pursuant to section 660.315, have misappropriated any property or funds, or falsified any documents for service delivery of an in-home services client[.]" Section 660.305.10; *see also* section 660.250. In-home services agencies, and certain other entities described in the statute, may not employ persons who are named on the EDL. Section 660.315.11 and .12.

## Facts and Procedural Background

### Pre-trial

Plaintiff's petition was filed on October 6, 2010. It alleged that Plaintiff's name had been permanently placed on the EDL after DHSS determined that "allegations of falsifications of documentations [sic] verifying delivery of [personal care assistance] services" were substantiated. The petition averred that Plaintiff had not received notice of the violations alleged by DHSS and was thereby denied an opportunity to challenge them. As to harm, the petition stated,

> [DHSS] alleges that the time frame in which to request a hearing was not met by Plaintiff. Nevertheless, Plaintiff sent a letter and a Motion for Removal from the [EDL] or in the alternative Motion for Hearing which was answered with a letter stating that [DHSS] has no procedure for the review of Plaintiff's placement on the EDL due to Plaintiff's failure to submit an appeal within the statutory time frame.

### The Trial

On April 20, 2011, the case was tried to the court. The following is a summary of the evidence adduced at that trial. Plaintiff lived with her daughter and grandchildren at her residence in Poplar Bluff.[3] Sometime in 2009, Plaintiff received a notice of violation from DHSS, requested a hearing, and retained counsel to represent her. Plaintiff testified that she never received any other notice of her right to request such a hearing, either by certified or regular mail, in connection with a second alleged violation by DHSS. She also testified that she did not receive a notice that certified mail was available for her to pick up at the post office in connection with the second matter. Instead, she testified that she found out about the second alleged violation from the attorney she had hired to represent her in connection with the first alleged violation while they were preparing for a hearing on that alleged violation.[4] Plaintiff said that if she had received notice of her opportunity to request a hearing on the second alleged violation, she would have reacted the same way she did in response to the first allegation—she would have taken it to her attorney and would "[d]efinitely" have requested a hearing.

Deborah Dean Hansen, an attorney employed by DHSS, testified that in the course of her duties she determined whether particular individuals should be "referred" to the EDL based upon complaints of abuse or neglect. Ms. Hansen testified that a previous EDL matter involving Plaintiff was initiated in 2009, and Plaintiff responded to the July 2009 notice of violation that had been mailed to her by requesting a hearing. Ms. Hansen said that in the previous case, notice was sent via both certified and regular, first-class mail. A "returned signed green card" from the Postal Service bearing the signature "D. Jaco" with Plaintiff's address was

---

3. The house number and street name stated by Plaintiff during her testimony as her address matched that stated as her address by the EDL attorney and the senior office support assistant for DHSS during their testimony.

4. A former DHSS investigator, Penney Baggett, testified that she participated in both investigations involving Plaintiff. During the second investigation, she tried to visit Plaintiff at her home, but she was unsuccessful in meeting with her. Ms. Baggett testified that she was not attempting to notify Plaintiff of a hearing, she did not make the determination of whether a hearing would be a possibility in the second matter, and she was "merely trying to interview [Plaintiff] about the allegations of this [second] investigation."

received by DHSS approximately two days after it sent its notice via certified mail.

Ms. Hansen testified that about a year after DHSS sent that first notice, she signed another notice addressed to Plaintiff and dated July 21, 2010 regarding the second alleged violation. The second notice was to be sent "by regular first[-]class mail" at "the address that [DHSS] had on file for [Plaintiff] from the previous case[.]" Ms. Hansen did not "handle the mailing personally." She did not receive the second notice back from the Postal Service as undeliverable.

Ms. Hansen conceded that she did not know precisely when the second notice would have been taken from her office to the mail department and she could only assume that it was somehow delivered to the Postal Service. Likewise, she could only assume that it was actually delivered to Plaintiff's mail box and collected by Plaintiff. Ms. Hansen admitted that she had no proof that Plaintiff actually received that notice. Ms. Hansen testified that she also sent the same information "by certified mail to the same address on the same date." That notice was returned to DHSS by the Postal Service on August 24, 2010 and was marked as "unclaimed." Ms. Hansen testified that the deadline for requesting a hearing was August 20, 2010.

On August 23, 2010, Ms. Hansen had a staff member check with Plaintiff's attorney's office "to determine if they still had the same address for [Plaintiff]." Ms. Hansen "was concerned that [DHSS] had not received an application for stay hearing from [Plaintiff] especially since [DHSS] already had litigation pending with [Plaintiff] and [Ms. Hansen] had anticipated that [DHSS] would be seeing an application for stay [of] hearing." She testified that someone in the attorney's office indicated that their address for Plaintiff matched the address DHSS had on file.

Ms. Hansen admitted that she did not instruct the staff member to inform the attorney's office that DHSS had sent a notice to Plaintiff that had been returned. She admitted that instead of asking someone in the attorney's office whether the attorney was going to represent Plaintiff in the second matter, that staff member simply verified Plaintiff's address. Ms. Hansen stated, "I was not able to determine that [Plaintiff] had a different address than that we had sent the notice to. So on August 24, our determination was that she had not filed a timely appeal and her name was added to the [EDL]."

Kimberlyn Bray testified that she was a senior office support assistant for DHSS, and she recalled preparing notices to be sent via regular, first-class mail and certified mail for Plaintiff on July 21, 2010. She said she used a previous address that her office had on file for Plaintiff. She knew that Plaintiff had a contested case pending with the office, but she did not do any checking to see if she had Plaintiff's correct address. Ms. Bray said that she put outgoing mail that must be postmarked the same day in a green envelope and the green envelope was then placed in a bin. Someone from the Missouri Office of Administration ("OA") would then pick up the mail from the bin. Ms. Bray confirmed that it was the responsibility of OA to collect the "mail for all the departments or many of the departments in the state[.]" Ms. Bray agreed that she had no personal knowledge of whether the notice sent via regular, first-class mail was actually delivered to Plaintiff, but she did know that the notice sent via certified mail was returned to her office.

The United States Postmaster for Poplar Bluff, Jamon Barnes, testified that he had no knowledge as to whether a particular regular, first-class mail item was sent to Plaintiff. He agreed that a piece of

mail could be accidentally destroyed or could be dropped by the mail carrier without the carrier noticing the drop.

### The Judgment

The trial court found that

the [Plaintiff] was given inadequate notice and should have received either personal notice or some other form of adequate service in order to have been given the opportunity to respond to the allegations. Notice is a fundamental and constitutional right. The [c]ourt finds that [DHSS failed] to deliver to Plaintiff a notice reasonably calculated to apprise Plaintiff of the allegations, especially in light of the fact that Plaintiff had counsel representing her on another case involving the same parties, in which Plaintiff had filed a response to [and] coupled with the findings of the

Court that the Plaintiff's testimony with regard to notice was found to be credible and believable.

As a result, the judgment ordered DHSS to "re[-]serve notice to Plaintiff and Plaintiff's attorney, with adequate time for them to file a response," and assessed costs against Plaintiff. This appeal timely followed the issuance of that judgment.

### Analysis

■■ As earlier noted, DHSS asserts it gave "constitutionally adequate" notice in this case. In support of its point, DHSS argues that personal service is not required for due-process purposes, citing *Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) and *Schlereth v. Hardy*, 280 S.W.3d 47, 51 (Mo. banc 2009).[5] As a generalization, that is true. Proof of actual service is not required for due process purposes, *Jones,*

---

5. In *Jones,* certified mail notifying a property owner of unpaid taxes and a pending delinquency sale had been returned unclaimed, the only other notice was a newspaper advertisement for public sale of the property, and the original property owner alleged that his property was taken without due process when the state of Arkansas sold it to a third party. 547 U.S. at 223–24, 126 S.Ct. 1708. The United States Supreme Court held that under the facts of the case, "the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so. Under the circumstances presented here, additional reasonable steps were available to the State." *Id.* at 225, 126 S.Ct. 1708. As a result, the state court judgment finding that due process had been satisfied was reversed. *Id.*

In *Schlereth,* a purchaser of a property sold for delinquent taxes sent notice of redemption rights via a certified letter to the former owner, the former owner admitted knowing that the postal service provided notice on two occasions of a certified letter for pick-up, but the former owner did not claim the letter. *Id.* at 48. The purchaser, "proceeding under section 140.405, [took] on the governmental obligation to give notice that satisfies due

process." *Id.* at 51. Our high court found that "this Court is obligated to follow the decision of the United States Supreme Court in *Jones v. Flowers,* which holds that when certified mail is returned unclaimed, due process requires the state to take additional reasonable steps to notify the property owner." *Id.* at 48. In the context of a real estate tax sale where certified mail containing notice was unclaimed, "[s]ome follow-up notice was required, whether by regular mail, posted notice calculated to notify the owner or service by a process server." *Id.* at 53. The Court observed that "[i]f [plaintiff] had sent the notice by regular mail as follow-up to the unclaimed certified letter, [defendant] would be hard-pressed to rebut the presumption that she received the notice if the letter was not returned as undeliverable—the outcome of this case would be different." *Id.* at 51–52. But, the Court went onto state:

As a matter of prudence as well perhaps as constitutional necessity, therefore, a person who sends notice by certified mail—even where (as here) that is the only method the statute prescribes—may be well advised to use a process server to ensure that the best notice practicable is delivered if the addressee does not sign for it.

*Id.* at 52.

547 U.S. at 226, 126 S.Ct. 1708, and "the essential test to be applied is whether the notice 'is *reasonably calculated* to reach the interested parties.'" *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem: Manager of Revenue of Jackson Cnty., Missouri,* 328 S.W.3d 728, 734 (Mo.App. W.D.2010) (quoting *Garzee v. Sauro,* 639 S.W.2d 830, 832 (Mo. banc 1982)). (Emphasis as in original). But, the Supreme Court also acknowledged in *Jones* its previous requirement that "[t]he government [ ] consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." 547 U.S. at 230, 126 S.Ct. 1708. We need not, and do not, decide whether due process requires DHSS to inform opposing counsel that a client is facing a new allegation when a notice sent by certified mail is returned unclaimed because DHSS could not rely on the "presumption that a letter duly mailed has been received by the addressee," *see Clear v. Missouri Coordinating Bd. For Higher Educ.,* 23 S.W.3d 896, 900 (Mo.App. E.D. 2000), in the face of evidence rebutting that presumption.

DHSS claims that "[w]hen there is no doubt about the correctness of an address, a letter sent by regular mail, which is not returned to the sender, is presumed to be received, and evidence of non-receipt is insufficient to rebut the presumption." We disagree with its assertion that sending a correctly addressed letter by regular mail creates an *irrebuttable* presumption of receipt.

In support of its claim, DHSS cites *Schlereth. Schlereth* stated, "Under *Jones,* the least that could be expected is that a regular-mail letter be sent; if not returned, the sender could presume that it was received where there is no question about the correctness of the address." 280

S.W.3d at 51. But *Schlereth* also quoted *Clear* for the principle that "'[e]vidence of non-receipt does not nullify the presumption but leaves the question for the determination of the finder of fact under all the facts and circumstances of the case.'" *Id.* (quoting *Clear,* 23 S.W.3d at 900). As a result, *Schlereth* provides no support for DHSS's contention that the presumption, once properly invoked, cannot be rebutted. In other words, once evidence of non-receipt has been presented, the ultimate value the presumption has in resolving the dispute is to be determined by the fact finder.

■  Further, it is not clear that DHSS was entitled to the presumption in the instant case. Although DHSS characterizes the trial court's alleged error as one of improperly interpreting or applying the law, the trial court, based on the evidence outlined above, could have determined that the notice was never actually delivered to the Postal Service.

> Evidence of the settled custom and usage of a sender in the regular and systematic transaction of its business is usually sufficient to establish a rebuttable presumption of delivery when direct proof of mailing is impractical due to the large volume of mail involved in the sender's office. *Hills v. McComas Rentals, Inc.,* 779 S.W.2d 297, 299 (Mo. App.1989). However, when evidence is introduced that the particular item allegedly mailed was not received, an issue is created for the trier of fact to resolve.

*Atlanta Cas. Co. v. Hershberger,* 849 S.W.2d 597, 601 (Mo.App. W.D.1993). *See also Weidner v. Anderson,* 174 S.W.3d 672, 678 (Mo.App. S.D.2005) (stating, in dicta, that the "presumption that the pleadings were duly mailed ... could be rebutted by evidence that (a) the mailing was not received by [p]laintiffs, or (b) that [the ad-

dress] was not [p]laintiffs' correct address").

The trial court did not find that the notice DHSS intended to send via regular, first-class mail was, in fact, duly mailed. And while the trial court did not expressly find that DHSS failed to show it was entitled to the presumption of receipt, such a finding is consistent with its other findings, and we may "affirm the judgment on any grounds sufficient to sustain it." *Russo*, 263 S.W.3d at 687. The judgment is also devoid of any conclusion of law holding that notice sent by regular, first-class mail was constitutionally deficient. The judgment simply found that "[Plaintiff] was given inadequate notice[.]"

Here, no one testified to having actually delivered the notice to the Postal Service. DHSS simply relied upon the assumed practices of OA in collecting and delivering mail. Plaintiff testified that she did not receive the notice allegedly sent by regular mail. The trial court found Plaintiff's testimony was "credible and believable" and "[found] the issues in favor of [Plaintiff]." We defer to its resolution of all witness credibility questions and its ultimate resolution of this contested fact. *See MC Dev. Co., LLC*, 299 S.W.3d at 603; *White*, 321 S.W.3d at 308.

Having failed to meet its burden of persuading us that the trial court erred, DHSS's point is denied, and the judgment is affirmed.

RAHMEYER and LYNCH, JJ., Concur.